## City of Peoria v. George E. Adams.

1. PERSONAL INJURIES—*Proximate and Direct Result of Negligence.*—A person can not be held responsible for injuries unless such injuries are shown to be the direct and proximate result of some negligence, or a neglect of some duty imposed upon him by law.

City of Peoria v. Adams.

2. SAME—*Proximate and Remote Causes.*—The test to determine as to whether an injury is the direct or remote result of an act of negligence, is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself, sufficient to stand as the cause of the misfortune, the other must be considered as too remote.

3. SAME—*Exercise of Due Care for One's Safety.*—Where the plaintiff's declaration showed that a building in which he worked had been for fifteen years in such an unsafe condition as to endanger the lives of people who might lawfully be therein, and he testified that he had worked in such building for two years but had never looked to see whether it was safe or unsafe, *it was held,* that if he knew the building was unsafe he was not in the exercise of due care for his own safety in being there at all.

4. CITIES AND VILLAGES—*Carrying off Surface Water—Rule of Liability.*—The duty of a municipal corporation in providing for carrying off surface water is dictated and measured by the exigencies of the case, and no higher duty is imposed upon such a corporation than upon a private individual under the same circumstances, the rule of liability being the same in both cases.

5. SAME—*Use of Streets for Railroad Purposes.*—A city has a right to allow the use of a street, or a portion thereof, for railroad purposes, and if such use interferes with the natural flow of the water falling thereon it is its duty to provide means for carrying it off, so as to do no additional damage to adjoining property.

6. SAME—*Excessive Rainfall—Responsibility for Damage Done By.*—Where a city has provided sewers or drains of ample capacity to carry off all water likely to fall or accumulate upon the streets on all ordinary occasions it is not guilty of negligence in failing to anticipate and provide for unexpected and extraordinary storms. The rule is that the outlet must be of ample capacity to carry off all the water likely to be in it, but it is not applicable to extraordinary rainfalls, which can not be foreseen, and for damage done by them no one is responsible.

7. SAME—*Failure to Provide Sufficient Sewers to Carry Off Surface Water—Limit of Liability.*—Where a city is guilty of negligence in failing to provide sufficient catch basins and sewers to carry off the surface water, its liability is confined to such injuries as are the proximate or natural result of such negligence.

8. LANDLORD AND TENANT—*Liability of the Owner and Occupant of Premises.*—The general rule is, that the occupant, and not the owner, as such, is responsible for injuries received in consequence of a failure to keep the premises occupied in repair.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the May term, 1897. Reversed. Opinions filed December 17, 1897.

WILLIAM V. TEFFT, city attorney, for appellant; W. I. SLEMMONS, of counsel.

The cause of an injury is in contemplation of law that which immediately produces it as its natural consequence; therefore if a party be guilty of an act of negligence which would naturally produce an injury to another, but before such injury actually results, a new and independent force intervenes and causes the injury, the original party is not responsible, even though the injury would not have occurred but for his negligence. Washington v. Baltimore, etc., R. R. Co., 17 W. Va. 190; Am. & Eng. Ency. Law, Vol. 16, 446, note.

The test is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote. Insurance Co. v. Tweed, 7 Wall. (U. S.) 44; Scheffer v. Ry. Co., 105 U. S. 249; Bishop on Non-Contract Law, Sec. 41–48; Lewis v. Flint & P. M. Ry. Co., 54 Mich. 55; Seale v. Gulf C. & S. F. Ry. Co., 65 Tex. 274.

And the test is, was it a new and independent force, acting in and of itself in causing the injury, and superseding the original wrong complained of, so as to make it remote in the chain of causation. Pullman Palace Car Co. v. Laack, 143 Ill. 242; citing Bishop on Non Contract Law, Sec. 42, 835–6.

There is no other just or reasonable rule than to determine, in every instance, whether the loss was one which might reasonably have been anticipated from the careless setting of the fire, under all the circumstances surrounding the careless act, and if it was, under the circumstances, a natural consequence which any reasonable person could have anticipated, then the act is a proximate cause. Fent et al. v. Toledo, P. & W. Ry. Co., 59 Ill. 349.

WALKER & LANDAUER, attorneys for appellee.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action on the case in which appellee sued

appellant to recover damages for injuries sustained by him in consequence of the collapse of a building in which he was working on July 3, 1890.

There was a trial by jury resulting in a verdict in favor of appellee for $7,500, upon which he had judgment, the court having overruled a motion for new trial.

The suit was originally commenced against the executors of the last will and testament of Henry Mansfield, deceased (the former owner of the building), and also the devisees under said will, as well as appellant. Demurrer was filed to the declaration by all the defendants, and sustained as to all except the city of Peoria, leaving appellant as the only defendant.

The declaration alleged that the building in question, which was known as No. 103 South Water street, in the city of Peoria, was a three-story brick building, with a basement or cellar underneath the same, and having a sandstone foundation upon which to rest, and that the same had been and remained there for the space of fifty years and upward; that the building was erected by one Henry Mansfield, now deceased, from whom the defendants, other than the city of Peoria, derived title; that on November 1, 1893, Nathaniel Mansfield, as one of the executors of the last will and testament of Henry Mansfield, deceased, leased the premises to one J. A. Engstrom by a certain written lease for a period of four years, for the sum of $144 per year.

And it is averred that at the time of making such lease "the said building and the walls and foundation thereof had become and were in a dangerous, ruinous, negligent and unsafe condition, and had been and remained so, carelessly and negligently, for a long space of time, to wit, for the space of fifteen years and upward, and so being in such dangerous, ruinous, negligent and unsafe condition, and having been in such condition so as aforesaid, the said building had become unfit for occupancy, and endangered the lives and persons of those who might lawfully be and remain in and upon the said building or premises. And the said building and walls and the foundation thereof so continued and

remained in such ruinous, dangerous, negligent and unsafe condition down to the third day of July, 1896, at which date last aforesaid the said building and walls and the foundation thereof had become and were so ruinous, dangerous, negligent and unsafe, that the application of any outside or external influence or force would cause or accelerate the said building to fall or give way, thus endangering the lives and persons of those who might lawfully be in and upon or about the said premises."

Inasmuch as appellant is now the only defendant, it is unnecessary to refer to the charges of negligence made against others who were originally made defendants with it, but the particular charge of negligence against appellant is that, having the control of the streets in the city of Peoria, it permitted the Chicago, Rock Island & Pacific Railway Company to so negligently and carelessly construct and maintain its tracks upon Water street, as to prevent the water falling thereon from flowing off the said street, and then failing to provide a sufficient catch-basin and sewer to carry off the water accumulating on such street, and preventing it from flowing off as it otherwise would have done, whereby it was caused to flow into the cellar of the building in question. And it is averred that on the said third day of July, 1896, "there was a rainstorm of somewhat more than usual volume, and that by reason of the railroad tracks being in the street, and there being no sufficient way provided for carrying off the water, it was forced into the cellar or basement of the building to a considerable depth, thereby weakening and softening the walls and foundation of said building, and causing the same to fall," thereby causing the injury to the plaintiff.

The declaration contained two counts, which are quite lengthy, and contain matter not important to be noticed, it having been inserted to charge other defendants not now before the court, but we have given the substance of the charges of negligence against appellant as contained in these two counts and the amendment thereto.

While the declaration avers a leasing of the building in

question by the executor of Mansfield, deceased, to J. A. Engstrom, there is nothing whatever in the evidence showing any such lease. It does appear from the evidence, however, that at the time the building fell and injured appellee, he was in the employment of said Engstrom, and was engaged in picking chickens in the second story of the building.

Adjoining the Mansfield building, in which appellee was at work, was what is known as the Woolner building, occupied as a saloon by one Casper Brodman. The evidence shows that the wall of the foundation of the Woolner building where it adjoins the Mansfield structure, has given way and fallen on two different occasions, once about four years before the collapse of the Mansfield building, and again on the day of the accident, when from fifteen to twenty-five feet of the foundation wall gave way and fell in along the center of the building, and during the afternoon before the Mansfield building fell, men were sent into the basement of the saloon to shore up the building where the wall was gone, by putting props under it, to accomplish which, they used jack-screws to raise and keep up the building.

About five o'clock in the afternoon, while appellee was at work picking chickens, having by his side a cook stove with a boiler of hot water upon it in which to scald the chickens so that they could be picked, the building in which appellee was working suddenly collapsed, carrying him down with it, forcing his arm into the boiler of scalding hot water, and pinioning him in such a manner that he could not remove it therefrom before it was so badly injured that amputation thereafter became necessary, and he thereby lost his arm. He also suffered other severe injuries from some of which, it is claimed, he has never recovered. There can be no question that he has been a great sufferer and sustained serious damages. But the important question in the case is, as to whether appellee, by his declaration and proofs, has made out a cause of action against appellant; because it is not to be held liable, unless the evidence shows that appellee's injuries are

the direct and proximate result of some negligence of appellant, or a neglect of some duty which it owed to him as one of its citizens.

And in order to recover, appellee must have proved, by a preponderance of the evidence, the cause of action as alleged in his declaration, and it must also appear that he was guilty of no contributory negligence, but was himself in the exercise of due care for his own safety at the time of the accident. While the declaration, as we have seen, alleged that the building had been for fifteen years in such a dangerous and unsafe condition as to endanger "the lives and persons of those who might lawfully be and remain in and upon the said building or premises," yet it nowhere avers that appellee did not know of this unsafe condition, and was not as well informed in relation thereto as appellant or any one else. Nor in his testimony does he say that he did not know of the unsafety of the building. All that he says on that subject is, that he never looked to see whether it was safe or unsafe. Although he may not have looked to see whether it was safe or not, he may have known perfectly well it was an unsafe structure for him to work in. If he did, then he was not in the exercise of due care for his own safety in being there at all, and his misfortunes are attributable to his own folly. He was working in the building for two years before it collapsed, and during that period was in the basement two or three times a week, and if there was any unsafety in the foundations, it was as well open to his observation as that of any one else. But even in his declaration he does not aver that he was in the exercise of due care for his own safety. What he does say is, that he was "exercising due care and caution in the employment of his then employer." The declaration, as well as the proofs, fall far short of showing that appellee was exercising due care and caution for his own safety at the time he received his injuries. But aside from any question of due care on the part of appellee, we are of the opinion that neither by the declaration nor the evidence does it appear that the appellee's injuries

were the proximate result of any negligent act or omission of appellant. It may be that the construction of the railroad in the street had a tendency to prevent the flow of water as freely as it might otherwise have done, and it may be that the catch-basins and the sewers provided by the city for carrying off the surface water have proven of insufficient capacity to accommodate all the water which might fall during an unusual or excessive rain storm, and yet appellant be guilty of no negligence. The question is, has the city failed to do what a reasonable and prudent person would ordinarily have done under the same circumstances, or done that which such a person under the existing circumstances would not have done? The duty is dictated and measured by the exigencies of the occasion. Baltimore & P. R. R. Co. v. Jones, 95 U. S. 441. No higher duty is imposed upon a municipal corporation than upon a private individual under the same circumstances. The rule of liability as to both is precisely the same. We think the authorities are clear upon this proposition. In what, then, does the negligence of appellant consist? Certainly not in the mere fact of allowing a railroad to be constructed in a public street, provided reasonable care was used to prevent damage to abutting property. The city had the undoubted right to allow the use of the street or a portion thereof for railroad purposes, and if such use interfered with the natural flow of the water falling thereon, or passing over the same, it was the duty of the city to use reasonable care to provide means for carrying it off, so as to do no additional damage to adjoining property. We think the evidence shows that appellant did this. Indeed, it appears to us that it had taken extraordinary precautions in that regard. Without going into the details as to the construction and size of the catch-basins and sewers, the uncontradicted testimony of the city engineer is, that they were of ample capacity to take care of all the water which would ordinarily accumulate upon the street in question. It is true that on the day of appellee's injury, water flowed into the cellar of the building in which he was employed, in considerable volume

and quantity, and all the evidence shows that it came from an extraordinary rain storm, amounting to 2.68 inches over the whole area, and most of which, according to the testimony of one of appellee's witnesses, Michael Driscoll, fell within fifteen or twenty minutes. He says he never knew it to rain harder, or more water to run to the point in question than did at that time, and that the water was the deepest there then that he ever knew it. It is not disputed that the city had provided for a rain fall of two inches per hour over the area drained, and the evidence shows that one and one-half inches per hour is more than the ordinary rain fall. The city, then, having provided ample capacity to carry off all the water likely to fall or accumulate upon the street upon all ordinary occasions, was not guilty of negligence in failing to anticipate and provide for unexpected and extraordinary storms. "The rule is that the outlet must be of ample capacity to carry off all the water likely to be in it. But the rule is not applicable to an extraordinary and excessive rain fall, which is held to be *vis major.* Such infrequent and extraordinary occurrences can not be foreseen and provided against, and for damages caused by them no one is responsible." Phila., etc., R. R. Co. v. Davis, 68 Md. 281, S. C., 6 Am. State Rep. 440; Gulf, etc., Ry. Co. v. Pomeroy, 67 Tex. 498; Shearman & Redfield on Neg., Sec. 17 (note), p. 18.

The evidence shows that along the whole front of the Mansfield building there were open gratings left in the sidewalk, and maintained for the use and benefit of the owners or occupiers of the building, and it does not appear that any considerable quantity of water would have flowed into the cellar but for these open gratings through which it found its only passage. Certainly the city would not be liable to the owner or occupant of the building for damages occasioned by the flowage of water through these gratings, maintained by them for their own benefit, and appellee would stand in no better position in that regard than they would. Whatever may have been the relative rights and duties of Engstrom, the alleged tenant, and the

owners of the building, as to keeping the same in repair, appellee, as the employe of Engstrom, was in the same condition as concerned his right to recover for injuries as the tenant was, because he entered under the same title, and hence assumed the same risks.   Cole v McKey, 66 Wis. 500; Borman v. Sandgren, 37 Ill. App. 160.

"The general rule is, that the occupant and not the owner, as such, is responsible for injuries received in consequence of a failure to keep the premises in repair."   Gridley v. City of Bloomington, 68 Ill. 47; citing Chicago v. Brennan, 65 Ill. 160, and other cases.   If, therefore, injury to the building was caused by the water flowing through these gratings, maintained by the occupant of the building, he could recover no damages therefor from the city, and his servant would stand in no better position.   The cases are numerous supporting this proposition.   It is to be observed that the declaration contains no charge of any injury to the foundation of the building by water flowing therein on any other occasion whatever, than that in the extraordinary storm of July 3, 1896.   Some of the witnesses testified to water having entered into the building on other and former occasions, but the plaintiff himself testified that, although he had worked in the building for two years, he never saw water in the basement or cellar before the day of the accident.   If appellee recovers at all, it must be upon the allegations of his declaration, which attributes the collapse of the building to the weakening of the foundations by the one storm above referred to.   It would seem incredible, that if the foundations had been in a reasonably safe condition before, as he now seeks to claim, they could have been so weakened and undermined by one storm as to cause a collapse of the building within twelve or fourteen hours thereafter, without any other intervening cause, and yet this is the basis of his claim for damages as set forth in the declaration.

The contention of appellant is, that the fall of the wall under the Brodman building caused the weight of that structure to come upon the Mansfield building, which,

being in a dangerous and dilapidated condition, could not stand the strain of this additional weight, and, in consequence thereof, collapsed. There is much force in this contention, which finds support in the evidence, and affords a more reasonable theory for the causes of the collapse than is found in the claim of appellee, that it was in consequence of the weakening of the foundations by the storm of July 3d. We do not think the proofs show that the water falling at that time caused the building to collapse. The foundations were of sandstone, and the process of disintegration must have gone on for a considerable length of time in order to have so weakened them that they would not sustain the weight of the building. The evidence of the experts shows, that where sandstone, of the character of that composing this foundation, is kept continually wet, it will not disintegrate; but when it is wet and dried alternately, it will do so. Whatever may have been the fact as to the foundation in question, it is sufficient to say that no case is made by the declaration which would warrant a recovery on account of any former wetting of the foundation through any alleged negligence of appellee.

But even were it conceded that appellant was guilty of negligence in failing to provide sufficient catch-basins and sewers to carry off the surface water, yet we are of the opinion that appellee's injury, for which the jury have awarded him large damages, was not the proximate or natural result of any such negligence. Every person is to be held liable for all those consequences which might have been foreseen and expected as the result of his conduct, but not for those which he could not have foreseen, and was, therefore, under no moral obligation to take into consideration. Shugart v. Egan, 83 Ill. 56. The principal injury to appellee was the loss of his right arm, by reason of its having been so terribly scalded by the hot water he was using while picking chickens. He sustained other injuries and bruises of a minor character from which he substantially recovered, but the verdict of $7,500 was, no doubt, given for the loss of his arm. It certainly can not be con-

tended with any show of reason, that appellant could anticipate or foresee that a failure to provide sufficient catch-basins or sewers for carrying off surface water, would lead to any such terrible result to one at work in a building on the street, and, therefore, under the rule above announced, it would not be responsible. Indeed, under our view of the case, the collapse of the building itself was not such a result as could have reasonably been anticipated or foreseen. But surely there was an intervening cause, a new and independent force, acting in and of itself, which produced the loss of the arm, and made the claim therefor too remote in the chain of causation. Pullman Palace Car Co. v. Laack, 143 Ill. 242; Fent et al. v. T., P. & W. Ry. Co., 59 Ill. 349.

The test is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote. Insurance Co. v. Tweed, 7 Wall. (U. S.) 44.

Upon a most careful consideration of the whole case, we are constrained to hold that appellee has not made out a cause of action against appellant, and that it is not responsible for his injuries. Under this view of the case, we deem it unnecessary to discuss the questions raised upon the instructions, or to consider whether or not, if the appellee had proved a cause of action, the damages are excessive. Upon the facts, we hold that appellee is not entitled to recover, and the judgment will therefore be reversed. Judgment reversed.

FINDING OF FACTS TO BE MADE A PART OF THE JUDGMENT.

We find, as a fact, that appellant was not guilty of any negligence which caused the injuries to appellee.

We further find, as a fact, that the injuries to appellee were not the proximate or natural result of any negligent act or omission on the part of appellant.