Bigger, J.
Heard on motion for non-suit.
I have spent considerable time considering the question submitted here as to the liability of the city on the undisputed evidence in this case for the injuries sustained by the plaintiff. I may say that the question presented here is an important one, and for that reason I have given it more than ordinary consideration, and I have spent more time upon it than I ordinarily do, and I find it to be one of considerable difficulty.
I examined a large number of decided cases, but the diligence *359 of counsel on both sides has produced the only decisions* on this question that seem to have been before the courts directly. At least, I have been able to find nothing outside of these after the most diligent search.
However, decided eases are not always the safest rule to follow. It is important always to look at the underlying fundamental principles of a case in determining the question of liability.
Now.these cases, two cited here by the defendant, and one cited by the plaintiff, seem to be in point; the two cases cited by the defendant hold that where the plaintiff was an abutting lot owner and constructs area-ways, cellar-ways and gratings leading thereto for light and air and probably for the purpose of. unloading coal in the basement of a building, and he is damaged by water, surface-water flowing over the pavement and finding access to the basement, that there can not be a recovery; and this is put upon the ground that it is contributory negligence upon the part of the plaintiff.
The other case, the Dakota case, seems to hold that there may be a recovery in a case where the owner has constructed an opening in the street. It is to be observed though, that that opinion is in a state where the fee is not in the municipality, and the judge in delivering the opinion in passing says that the decision might probably be otherwise if the fee were in the municipality.
I am not inclined, however, to the opinion that there is much distinction to be drawn in so far. as the rights of an abutting lot owner are concerned to make an excavation under a portion of the street, whether it be sidewalk or other, by reason of the. fact that in one ease the city may have the fee, and in the other the fee may remain in the abutter. Our Supreme Court gives voice to' that in the Callan case, where it is said, that doubtless the rights of the abutter in the two eases are not practically different, in one case the right being a legal, and in the other an equitable right.
*360 I have always inclined to the opinion that such constructions might be made — that they are not at least per se a nuisance. If an area-way be constructed under a pavement, and be constructed in such manner as not to in any wise endanger the street for use by the traveling public, it is not in itself a nuisance. '
But there is a good deal of conflict in the authorities as to just what the nature of the right is, whether it is an easement or an absolute right; whether the right depends upon the consent of the city, or whether it is one which may be exercised without the consent. The fact is, that it is one which is generally exercised. Such area-ways are constructed under sidewalks, and it is the customary method of constructing them to have openings in the surface of the street, as in this case.
But as I have said, the references made are to the only decided cases. I incline to the opinion after the most careful examination of these cases and. of the principles underlying them, that the right of an abutting lot owner to make excavations tinder pavements — and I think there can not be any dispute about that — is one which is subservient to the use for which the street is primarily dedicated and designed; that is, for use as a street for the ordinary travel by the public, and that whatever rights are exercised are subservient to this right of the municipality.
That leads, of course, to the inquiry as to the extent of the liability of a municipality as to its streets. What is the extent of this liability which the law imposes upon a municipal corporation to care for its streets? I think the law is well settled that the extent of that liability is that the city shall exercise ordinary care to have its streets in a safe condition for use by the public, for the ordinary modes of travel; that is, for use by the public as a highway. The use, of course, which is made- by abutting. property owners under a sidewalk is not a street use; it is not a use for which the street was dedicated. Can the city then be held liable in negligence if it maintains a street in such condition as to be safe for the purpose for which it was dedicated for negligence to an abutter who exercises a right which he may *361 have a right to exercise; or isn’t the abutting property owner bound to make himself safe if he undertakes to make such a use as that of the street ? In other words, is it a question of contributory negligence, or rather a question of want, or absence of duty and liability on the part of a municipal corporation toward such an abutter?
Judge Williams: The Baltimore case meets that question squarely.
The Court : A municipal corporation does not owe any other duty under the law except to keep its streets, in so far as the surface of those streets is concerned, reasonably safe for public travel. If an abutter makes an excavation in the sidewalk, and the sidewalk falls in and kills him, of course the city is not liable. ITe takes that risk when he makes the excavation. If he makes an opening in the street through which surface-water may flow, Is the city liable upon any other principle? That is, does the city owe any duty to make the sidewalk safe for any reason to one who excavates under it? Does the law impose any such duty upon a municipal corporation?
After the most careful consideration, gentlemen, I have reached the conclusion, and of course it is my duty to announce the conclusion to which my examination leads me, that the city is not liable in a ease of that sort, but that the abutter assumes whatever risk is incident to his use of the street for a different purpose than that for which it was originally dedicated, and that, the city is not bound to exercise — I am speaking now in so far as the street itself is concerned — is hot bound to exercise care except toward those who are using the street for the purposes for which it was dedicated.
Now, of course, I realize the limitations to that principle; and one of them is that the city can not collect surface-water at a point, and throw it off, away from the street, upon an adjoining proprietor to his damage; but I believe that in the cases which have been cited, and announce this doctrine — and it is to be observed that they were rendered in states which have the law of Ohio — the fee to the stree'ts is in the municipality. That was not the fact in Dakota and I am not inclined *362 to give much weight to that, for the Dakota court itself remarks that the rule would probably be different in a state where the fee was in the municipality as in Ohio.
Now, of course, I have not forgotten the contention which counsel here make that there is some evidence that water had come in by another way than through the openings constructed by the property owner in the street, that is, through the floor of an adjoining room. The testimony of the witness was that some water was dropping through a cement floor. Of course that plainly upon the evidence was inconsequential and manifestly could not, in the time which this water stood there, have caused any damage, because the water began to recede in a very short time, and could not have done the damage which undoubtedly was done. Unquestionably the owners of this property suffered large damage by reason of the water flowing into the basement, b\rt the question presented now to the court for decision, upon the evidence here which is not disputed, is whether the city of Columbus is liable for the damage?
Of course, the mere fact of damage does not give the right to recover unless the law makes the city liable, and while I believe that the decisions which are cited here by the city correctly state the law, I should be inclined to place my decision upon the ground, not of contributory negligence of the defendant, but rather upon the ground that the law does not charge a duty upon the city in so far as the surface of its streets is concerned, to do other than to keep them in a reasonably safe condition for the traveling public; that the use made was not one by the traveling public, but by an abutter purely for its own use.
Now upon that subject, in discussing the question of extent of liability of a municipal corporation in keeping its streets in repair, Dillon in his work on Corporations, at Section 1019, states the law: “On the subject of the extent of the liability, from what has already been said that negligence is the ground of the liability, it follows that a municipal corporation is not an insurer against accidents upon the streets and sidewalks. It is sufficient if the streets, which include sidewalks and bridges thereon, are in a reasonably safe condition for travel in the ordi *363 nary modes, by night as well as by day; and whether they are or not is the practical question to be determined in each case by its particular circumstances. ’ ’ That is a succinct statement of the law7. "When a municipal corporation has the surface of its streets in a reasonably safe condition for travel by the ordinary means, that is the extent of its liability; and it seems to me to follow that, where a use is made of the street by an abutter which is not one for which the street is dedicated, but one made only for the private use and benefit of the abutter, he assumes these risks; and that so long as the city does not cast water beyond its streets, if the injury comes from the street itself by reason of the abutter having made an opening into it, to undertake to hold the city liable would .be to impose upon it an obligation which the law7 has not put upon it; that is to render it liable to abutting property owners who may see fit to excavate under it, although we may assume, and I think it is probably true, that abutting property owners have a right to excavate for such purposes under the street, j7et the right is always secondary to and subservient to' the use of the street for the purposes for which it was dedicated; and that no higher liability can be imposed upon a municipal corporation than the one laid down by Judge Dillon.
In m37' opinion the decisions which hold that there is no liability 'which can be asserted against a municipal corporation, ■where gratings leading to an area-wa37 under a sidewalk cause the injiuy, are sound in .principle. But I would rather put my decision on the ground that there is no negligence which can be asserted — no duty which the city owes to abutters who excavate to protect them from injuries from water which ma37 go in through an opening which they make.
I am basing my decision upon the ground that no negligence can be asserted against the efiy, except by those who are using the street in the way and for the purposes for which it was originally dedicated as a highway. I would not put the decision upon the ground which the courts rest the decisions in the cases cited, that it is a contributory negligence of the abutting property owner, but rather upon the ground that it was simply *364 an assumption of risk by an abutting property owner, and that the city does not owe any duty to protect the abutter who excavates under the pavement against such consequences. I am of the opinion that these two cases, which hold that there is no liability in such cases, are the sounder in principle, and of course it is the duty of the court to announce its conclusion on that.
Williams, Taylor c& Pretzman, for plaintiff.
George 8. Marshall, Solicitor, E. Tj. Weinland and F. B. .'Hoover, Assistant Solicitors, for City of Columbus.
The motion is sustained.

The cases referred to are City of Peoria v. Adams, 72 Ill. App., 662; City of Guthrie v. Nix, 5 Oklahoma, 555; Dell Rapids Mercantile Co, v. Dell Rapids, 11 S. D., 116 (74 Am. St., 783).