## HAYS *v.* WILLIAMS.

### Opinion delivered November 30, 1914.

1. INSTRUCTIONS—PREPONDERANCE OF TESTIMONY—EVIDENCE.—The plaintiff in an action is entitled to recover upon making out his case by a preponderance of the testimony, and when the jury find that the issue has been established by a preponderance of the testimony, that is all that is required and the jury should be so instructed.

2. INSTRUCTIONS—PREPONDERANCE OF EVIDENCE.—An incorrect statement of the law in an instruction, relative to the finding of the jury upon a preponderance of the testimony, will not be prejudicial, when other instructions in the case properly declare the law upon that point.

3. NEGLIGENCE—PROXIMATE CAUSE OF INJURY—RELATION OF EVENTS.—In an action for damages due to negligence an instruction held proper which charged the jury that in order for them to find for the plaintiff that they must find from the evidence that there was a direct connection between the acts of negligence and the injury complained of, and that such connection must be something more than a series of antecedent events without which the injury would not have happened; and if subsequent to an original act of negligence a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original act of negligence is too remote and will not amount to a cause of action.

4. APPEAL AND ERROR—NEGLIGENCE—SPECIFIC OBJECTION—INSTRUCTION.— In an action for damages due to negligence, when the court erroneously used the word "knowingly" in its charge to the jury, that if the defendant knowingly and negligently caused the injury to plaintiff, the error should have been reached by specific objection.

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellees were the owners of a three-story brick veneered building in the city of Fayetteville, which was destroyed by fire on the 10th day of January, 1914. The first story was used for business houses, the second for offices and the third as a hall or lodge room. Appellant had his law offices in the second story thereof, and brings this suit for damages for the destruction of his library and office furniture in the fire.

The complaint alleges that the only entrance to the second floor of the building was from the south on Center

Street by a flight of steps, and the only entrance to the third floor was by a stairway leading from the second; that at the time of the fire there were several vacant rooms on the second floor, and that the defendants had control of the stairway, hall, toilet and vacant rooms; that they negligently allowed and permitted inflammable and combustible material to accumulate in the parts of the building in their possession and control; negligently left the doors thereto unlocked and unfastened day and night, and permitted the public the use thereof both day and night, and by the concurring negligence of appellees and some one in their building, because of their negligence, inflammable material was set on fire and the building and property of plaintiff destroyed.

The second paragraph of the complaint alleges that at the time he rented his office some of the tenants in said building were gamblers and known to be such by the defendants, or could, by the exercise of ordinary care on their part, have been known by them, and that after he became a tenant they rented rooms to others known to be gamblers and put them in the building; that the gambling and immoral and criminal classes of the city, through the negligence of defendant, had access to all parts of the building in the possession and under the control of defendants, and that they met therein and frequented said parts of the building; that the presence of the idle, immoral and gambling classes in said building and the inflammable material permitted to accumulate, constituted a nuisance by reason of which nuisance and the negligence of the defendants, and the concurring negligence of those in the building by their negligence, the inflammable material was set on fire and the building and plaintiff's property destroyed.

In the third paragraph it is alleged that the plaintiff was an entire stranger and had no knowledge of the reputation of the building or of the tenants therein, that he believed the building was a brick building when he rented offices, when in fact it was only veneered with brick; that he was ignorant of the uses to which some of the offices

were put, and the use and management of the building by defendants; that all these facts were known to the defendants, and it was their duty to disclose them to plaintiff, but they negligently concealed them from plaintiff, thereby misleading and deceiving him; that the construction of, the presence of the gambling and immoral classes in said building, and the uses to which portions thereof were put, together with the manner in which it was kept and controlled, were all latent defects and dangers of which plaintiff was ignorant, and could not by the exercise of ordinary care have discovered, and that by reason of such latent defects and dangers, together with the concurring and continuing negligence of the defendants, the building and plaintiff's property were destroyed by fire.

The defendants admitted that they were the owners of the building; that it was three-story; that the first floor was used as business houses, the second as offices, and the third as a hall and lodge room; that it was veneered with brick and that plaintiff rented an office therein and occupied it from about September 1, 1913, until it was destroyed by fire. They denied that they represented that the building was a brick building, and each and every allegation of negligence charged, and alleged that if the character of the tenants, the condition of the rooms, stairways, toilet, hall and doors of the building, and the accumulation and existence of *debris,* trash and other inflammable substances were and did exist as alleged by plaintiff, the same was unknown to the defendants and that plaintiff continued to occupy the building without objection or complaint to them of such conditions until it was destroyed by fire.

It appears from the testimony that the fire originated in what was called the "broom room" on the second floor of the building, the door of which was across the hall from the head of the stairway. In this room was some old lumber and some half empty paint buckets and brushes, old papers and filing cases, some of which belonged to plaintiff, and quite a lot of other stuff desig-

nated as junk by the witnesses. The brooms used in cleaning the building were also kept in this room, the door of which was fastened by an ordinary knob lock on the inside from which the knob had been removed, leaving a square hole through the door which was closed and locked by the pulling of it to. A square stick for opening it by inserting in this hole and turning as a knob would have been turned, was kept over the door for the use of those having a right to enter therein. There were also some papers and other inflammable material in a closet or room under the stairway which was kept fastened. The testimony on plaintiff's part tends to show that the door to the broom room was frequently left open; that the public had unrestricted access to it, and the hallways, stairways and toilet day and night; that the door to the stairway leading to the third floor or lodge room was frequently unfastened and open and that the idle, immoral and criminal classes of the city resorted thereto for gambling and other immoral purposes.

A specific instance of gambling in certain rooms on the second floor occupied by tenants as bed rooms was shown, also that certain women not the wives of the tenants had visited the room of one or two of them on at least one occasion when the caretaker or custodian of the building discovered them there upon returning from a fishing trip late at night. Appellant testified that he thought the building was a brick building and did not learn it was only veneered with brick until after the fire. On the part of appellees, the agent in charge of renting the building denied having represented that it was a brick building or having any knowledge or information that it was frequented by the gambling and immoral classes of the city. He also, upon information that a certain man having the reputation of "a rounder and gambler," was sleeping in one of the rooms that had not been rented to him, caused him to vacate it. Several peace officers, the chief of police, the night watchman and a deputy sheriff, testified that the building had no reputation as being used for gambling or immoral purposes or being fre-

quented by that class of people; that they did not know of it being used for any such purpose, and it was also shown that upon the report of the caretaker that the door leading into the lodge hall had been broken open, appellees had purchased and had put on a new Yale lock, that it could be fastened, and they might know who had the keys thereto; that this was done every time any complaint was made or they had any knowledge that the door had been broken open or could not be fastened. On the night of the fire, the chief of the fire department, who first reached the scene, testified that the door to the junk room where the fire originated, was closed and fastened, that he could not open it, though he pushed against it strongly with his shoulder. The statement of the fireman with him was not definite as to whether the door was open or closed. The door to the stairway to the third floor was so securely fastened that it took two or three men to break it down.

Among others the court gave the following instructions to the jury over appellant's objection:

"No. 2. I charge you that before plaintiff would be entitled to a verdict at your hands, he must satisfy your minds by a fair preponderance of the evidence that his property was destroyed by some act of negligence on part of the defendants, as alleged in his complaint, operating as the proximate cause of the destruction of his property; and, although you may find by a preponderance of the evidence that the defendants were guilty of some one or all of the acts of negligence complained of, yet if they were not the proximate cause of the loss of the plaintiff's property, he would not be entitled to a verdict against the defendants."

"No. 9. If you find that the defendants are guilty of the acts of negligence complained of, then before you would be justified in finding a verdict for the plaintiff, you must go further and find from the evidence that there was a direct connection between such acts of negligence, and the injury complained of; and such connection must

be something more than one of a series of antecedent events without which the injury would not have happened; if subsequent to an original act of negligence, a new cause had intervened, of itself sufficient to stand as the cause of the injury, the original act of negligence is too remote and will not amount to a cause of action."

"No. 10. If you find from a preponderance of the evidence that the defendants knowingly and negligently, by themselves or either of them, or by their agent, by any of the means alleged in plaintiff's complaint negligently contributed to and caused the injury complained of by the plaintiff, then you will find for the plaintiff in such sum as in your judgment will fairly compensate him for the injury sustained."

The jury returned a verdict in favor of the owners of the building, and from it appellant brings this appeal.

*J. W. Grabiel,* for appellant.

1. The second instruction for defendants was error. The use of the words "charge, "satisfy" and "fair" should have been eliminated. The jury is only required to *believe* from a preponderance of the evidence, etc., and that belief is to be based on the evidence introduced on both sides. 49 S. W. 260; 58 *Id.* 837; 67 Ill. 545; 90 Ill. App. 505. As to the word "satisfy," see 52 Ark. 517; 37 *Id.* 589; 150 Ill. 538; 29 Ill. App. 268; 66 N. Y. 558; 55 Ill. App. 295; 55 Oh. St. 146; 6 O. C. C. 294; 9 *Id.* 376; 3 O. C. C. (N. S.) 156; 14 Oh. Cir. Dec. 198. These errors were not cured by other instructions.

2. The ninth for defendant is objectionable and error because it requires the jury to find a *direct connection between such acts of negligence and the injury complained of* before they could find for plaintiff. Thompson on Neg., § 48. *Proximate cause* does not mean that the cause or condition nearest in time or space to the result is necessarily the proximate cause. Proximate is *probable* cause. 75 Ark. 133; 104 *Id.* 59; 90 *Id.* 247; 106 Am. St. 380; 50 *Id.* 352; 72 *Id.* 553; 30 L. R. A. (N. S.) 1210; Thompson on Neg., § 738.

3.   In the tenth instruction the use of ''knowingly'' is almost a peremptory instruction to find for defendant.

4.   As to prior or concurrent negligence of two or more persons or causes, and combined result of negligence and accident, see Thompson on Negligence, § § 68-75; 61 Ark. 381; 62 *Id.* 118; 86 Ark. 548; 95 *Id.* 301; 94 *Id.* 301.

5.   Many other points are made and many cases are cited in the able and elaborate brief of counsel, but as the court has only decided the four points as above they are omitted.

*Walker & Walker,* for appellee.

1.   It is true that the word ''satisfy'' as used in the second instruction should not have been used (52 Ark. 517), yet the court, as will appear from other instructions given, simply meant that a verdict could not be given except on a fair preponderance of the evidence.   81 Ark. 187.

2.   As to several proximate causes contributing to an injury, see 86 Ark. 289; 90 Ark. 326.   See also 55 Ark. 510; 58 *Id.* 157; 87 *Id.* 579.   If there was error, seemingly, in the second and ninth instructions, it was cured by other instructions given, and they were not objected to specifically.   The case was covered fully and fairly by the court's charge.   The facts were found against plaintiff by the jury.   38 Ark. 366; Cooley on Torts, p. 630; 97 Ark. 160; 86 Ark. 289, settle the law.   We find no reversible error.

3.   Points not settled in the opinion are omitted.

KIRBY, J., (after stating the facts).   There are many alleged errors complained of in the voluminous brief of appellant which we do not find it necessary to discuss.

Instruction numbered 2 is not in correct form and is open to some of the criticism directed against it by the appellant, and if it was the only instruction upon the point would call for a reversal of the case.

(1)   A plaintiff is entitled to recover upon making out his case by a preponderance of the testimony, and

when the jury find that the issue has been established by a preponderance of the testimony, that is all that is required and it should be so instructed. In *Shinn* v. *Tucker,* 37 Ark. 589, the court said:

"Civil verdicts should be given on preponderance alone 'for the party whose evidence, considered altogether, outweighs that of the other as to the fact in issue; or against the one having the *onus,* if, on the whole, the weight seems balanced."

In *Arkansas Midland Ry. Co.* v. *Cannon,* 52 Ark. 523, the court said:

"More appropriate words, however, and words adapted to express the idea intended, should have been used instead of the word 'satisfy.' In order to overcome the presumption of negligence, it was not necessary for the defendant to introduce evidence sufficient to convince the jury, beyond a reasonable doubt that it had not been negligent." "It is never necessary," said the court in *Shinn* v. *Tucker,* 37 Ark. 589, "in a civil case that a jury should be satisfied of the truth of their verdict in the sense of resting upon it confidently."

(2) The court charged, however, in the beginning of instruction No. 4 for appellees: "If you should fail to find by a preponderance of the evidence," etc., and in the latter half of instruction No. 8, "the burden is upon the plaintiff to establish his right to recovery and the extent thereof, by a preponderance of the evidence. If the evidence preponderates in favor of the plaintiff, you will find for the plaintiff. If the evidence preponderates in favor of the defendant, you will find for the defendant. If the evidence does not preponderate in favor of either the plaintiff or defendant, but equally balances between them, your verdict should be for the defendant," and on its own motion gave instruction No. 10, already set out, beginning, "If you find from a preponderance of the testimony," all of which unmistakably shows that the court understood the law, and intended to tell the jury only that the plaintiff was required to establish his cause by a preponderance of the testimony and entitled to recover

upon doing so. The instruction itself indicates this in the latter part, saying, "And although you may find by a preponderance of the evidence that the defendants were guilty of some one or all of the acts of negligence complained of, etc., 'yet if they were not the proximate cause,'" etc. The court would doubtless have caused the objectionable words "satisfy" and "fair" to be eliminated from this instruction if a specific objection had been made thereto, and, it not having been made then, it can not be availed of here. *St. Louis, I. M. & S. Ry. Co.* v. *Sparks,* 81 Ark. 187.

Instruction No. 9 is complained of because it told the jury that if they found the defendants guilty of the negligence complained of, before they would be justified in finding a verdict for plaintiff, "they must go further and find from the evidence that there was a direct connection between such acts of negligence and the injury complained of, and such connection must be something more than one of a series of antecedent events without which the injury would not have happened; if subsequent to an original act of negligence, a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original act of negligence is too remote and will not amount to a cause of action."

In *Pennsylvania Reduction Co.* v. *Horton,* 87 Ark. 579, in discussing the proximate cause of the injury, the court said: "'As was said by this court in *Martin* v. *Railway,* 55 Ark. 510, later approved in *James* v. *James,* 58 Ark. 157, there must be a direct connection between the neglect of the defendant and the injury. That its connection must be something more than one of a series of antecedent events without which the injury would not have happened." And, continuing, "It is a well settled general rule that if subsequent to the original negligent act a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original negligence is too remote." Thompson on Negligence, supplement to section 48, says: "The proximate cause is not necessarily the one nearest to the event, but the primary cause may

be the one proximately responsible for the result, although it may operate through one or more successive instruments. If the primary cause was so linked and bound to the events succeeding it that altogether they create and become one continuous whole—the one event so operating upon the others as to tie the result to the primary cause—the latter will be the proximate cause.''

(3) In *Pulaski Gas & Light Co.* v. *McClintock*, 97 Ark. 584, the court said: ''The primary cause may be the proximate cause of disaster, though it may operate through successive instruments,'' * * * and quoting from *Milwaukee, etc., Railway* v. *Kellogg*, 94 U. S. 476, ''but it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.'' This instruction does not say, and of course can not mean, that the negligence was required to be a direct cause of the fire nor the one nearest in time to it, but only that it was so linked and bound to the events succeeding it, so directly connected that altogether they create and become one continuous whole, the one event so operating upon the others as to tie the result to the primary cause, making it appear that the injury was the natural and probable consequence of the negligence alleged.

(4) Instruction No. 10 is not open to the objection made against it by plaintiff, and the word ''knowingly'' would doubtless have been eliminated if specific objection had been made. It was only the court's intention to say that if the things done complained of as negligence were known to defendants or their agent, or by the exercise of ordinary care could have been known, that they were liable. Objection should have been made to avail of the error if one had been committed.

The question of the negligence of appellees in the control and possession of the office building destroyed by fire in which appellant's loss occurred, was submitted to

the jury upon instructions fairly presenting the issues and they have found in favor of appellees. We find no prejudicial error in the record, and the judgment is affirmed.