BOCQUIN *v.* THEURER.

Opinion delivered April 8, 1918.

1.    WILLS—CONTEST—MAY BE READ TO JURY.—In the contest of a will the contents of the will may be read to the jury.

2.    APPEAL AND ERROR—IMPEACHMENT OF VERDICT.—A juror will not be permitted to impeach his own verdict.

3.    WILLS—ATTESTING WITNESSES—SIGNATURE BY MARK.—Where a will is signed by the testator by his mark, the person who witnesses the mark may be an attesting witness to the will.

4.    WILLS—GENUINENESS.—In the absence of any testimony showing that the testatrix, who was blind, had been imposed upon at the time she executed her will, an instruction upon that issue is improper.

5.    APPEAL AND ERROR—INSTRUCTIONS—"FAIR" PREPONDERANCE OF THE TESTIMONY—BURDEN OF PROOF.—The court instructed the jury that plaintiff must establish his case by a "fair" preponderance of the testimony. *Held*, where plaintiff contended that the word "fair" placed an undue burden upon him, that he should have raised the point by special objection.

6. WILLS—CONTEST—UNDUE INFLUENCE.—In the contest of a will on the grounds of undue influence, the contestant's only objection to the will being that it created a trust, objectionable to him, the contestant claiming that the person named executor in the will was the person unduly influencing the testatrix, instructions are proper which told the jury that testatrix could appoint whom she pleased for executor of her will, and that the probate court could remove an executor upon a proper showing.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

Appellant, *pro se.*

1. There was misconduct of the jury; the jury were improperly influenced by the argument of the juror Friedman and others. 111 Ark. 151. The income of contestant was not in issue and a collateral matter.

2. The will was not properly executed. The witness Smart signed for a testatrix and then attested the will. The law requires two witnesses to the will. One witness can not act in a dual capacity. 13 Ark. 486; 14 *Id.* 675; 193 S. W. 518.

3. It was error to refuse contestant's requests Nos. 13 and 18. The will was signed, acknowledged and published as her last will, as required by law. Kirby's Digest, § 8012-13; Gardner on Wills, 92. The testatrix was old, blind and infirm.

4. It was error to refuse No. 1, requested by contestant and give No. 1 for contestees. There was error in the other instructions. 87 Ark. 280; 84 *Id.* 292.

5. The verdict is against the evidence. Undue influence was shown.

*Read & McDonough,* for appellees.

1. There was no reversible error by reason of the alleged arguments of the juror, Friedman. The evidence was not admissible. 130 Ark. 48; 130 *Id.* 457; 48 Ark. 396; 15 *Id.* 403; 70 *Id.* 244; 35 *Id.* 109; 29 Cyc. 984-5; 37 Ark. 519; 191 S. W. 226, and many cases from other States. It was harmless.

2.    The will was properly executed and attested.    It was signed by mark and attested by two witnesses. Kirby's Digest, § 8013; K. & C. Dig. § 10052; 17 Ark. 292; 14 *Id.* 675; 23 *Id.* 396; 193 S. W. 518; 70 Ark. 449; 91 *Id.* 268.

3.    There was no error in refusing instructions 13 and 18.    49 Ark. 367; 87 *Id.* 246.

4.    There was no error in refusing No. 1 for appellant.    It was covered by others given.    No. 1 given for appellees covered this and is the well-established law. 87 Ark. 246; 49 *Id.* 367; 29 *Id.* 51; 13 *Id.* 474; 74 *Id.* 212; 122 *Id.* 407; 127 *Id.* 68.    It was not error to use the word "fair."    87 Ark. 261; 152 Mo. 394; 84 Ind. 395; 63 Iowa, 364; 6 So. 465; 18 Neb. 94, etc.    "Fair preponderance" means such evidence as when weighed with that offered to oppose it has more convincing power.    101 N. W. 665; 81 Pac. 41; 34 N. W. 712; 110 *Id.* 409; 119 Ark. 120.    No specific objections were made.    81 Ark. 187; 127 *Id.* 68; 119 *Id.* 530.

5.    The objections to 12 and 13 were general and in gross.    79 Ark. 338.

6.    There was no error in refusing No. 15 and in giving No. 4.    No. 15 was covered by others given.    No. 4 is the law.    104 Ark. 489; 127 *Id.* 68; 87 *Id.* 243.    No. 16 was covered by others given.

7.    The evidence fully sustains the verdict.    A bad memory does not show incapacity.    53 N. E. 2251; 153 Mo. 256; 178 Pa. St. 57; 240 Ill. 524; 123 N. W. 176.    No lack of capacity or undue influence was shown.    66 Ark. 623; 127 *Id.* 68; 17 *Id.* 292; 15 *Id.* 555; 66 *Id.* 623.    The evidence shows that testatrix was fully competent to make a will; that it was her last will and duly executed and witnessed, and that there was no undue influence.

SMITH, J.    Appellant is the son of Emma B. Bocquin, the probate of whose will was resisted by him upon the ground that his mother did not have testamentary capacity to make a will, and that its execution was prompted and secured by undue and improper influences. The will was upheld both by the probate court and in the

circuit court on appeal. Appellant discusses the testi-
mony at some length; but it abundantly supports the
verdict of the jury, and we will set out only such portions
of it as are necessary to an understanding of the instruc-
tions given and refused to which exceptions were saved.
The bulk of the estate was given by the testatrix to her
son, the appellant, but the devise was in trust, and it is
to the limitation on the use of the property thus devised
against which appellant complains, rather than against
the portion of the estate given him.

(1)    At the trial proponent was permitted to read
the will to the jury, and an exception was saved to this
action.    As a ground for a new trial the affidavit of a
juror was read, which stated the fact to be that a juror
named Friedman had argued that contestant would de-
rive an income of from $210 to $300 per month from the
trust estate, and it is said that this statement is incorrect.
No error was committed in permitting the will to be read
to the jury.    A knowledge of its provisions was necessary
for the jury to understand portions of the testimony, and
it was not improper for the jury to have this knowledge
in passing upon the validity of the will and the capacity of
the testratrix to make it.    *Strickland* v. *Smith,* 131 Ark.
350, 198 S. W. 690.

(2)    In answer to the argument that the jury was
improperly influenced by the statement of their fellow
juror Friedman, it is first said that the statement of this
juror to his fellows was not false.    We do not stop to
inquire whether the statement, if made, was true or false.
It suffices to say that, under the law, a juror is not per-
mitted to thus impeach his verdict.    *Speer* v. *State,* 130
Ark. 457, 198 S. W. 113; *Turner* v. *State,* 130 Ark. 48, 196
S. W. 477

The testatrix was old at the time of her death, and
had been blind for many years before she made the will;
but disinterested witnesses who had known her for many
years testified that her mentality was unimpaired and
that she was a woman of strong character and vigorous

intellect. The estate disposed of was a valuable one, and the will dealt with it with much attention to details and covered nine typewritten pages. It was prepared by an attorney of recognized ability, who testified that he had several conferences with the testatrix in ascertaining her exact wishes, and that several drafts of the will were made before one was written which fully met her approval.

A large number of instructions were asked, and given, both by the contestant and the proponent, and a large number of others were refused. A number of these instructions were marked by the court "refused as covered by other instructions." Such appears to be the case. Several of these instructions contained correct declarations of the law, and might very well have been given had not others covering the same ground been given. Under these circumstances no error was committed in refusing to give the correct declarations of the law which were refused. The issues in this case were simple and well defined, and to have increased the number of instructions which were given would have tended only to confuse these simple issues. A study of these instructions makes it apparent that counsel for both the contestant and proponent had before them, in the preparation of their instructions, the opinions of this court in the cases of *McCulloch* v. *Campbell,* 49 Ark. 367, and *Taylor* v. *McClintock,* 87 Ark. 243, as a number of these instructions employed the very language used in those opinions. These opinions are landmarks on the subject of testamentary capacity to make a will, and it would be a work of supererogation to review the law of this subject as it is announced in those opinions. We conclude, therefore, that no error was committed in the instructions which were given; and that error was not committed in refusing to multiply the instructions after others had been given which had declared the law applicable to the issues raised by the testimony.

(3)   The witnesses to the will were W. J. Echols and C. S. Smart, who were the president and cashier, respectively, of the Merchants National Bank, a bank with which testatrix had been associated for many years as a customer.   As has been stated, the testatrix was blind, and her name was signed to the will by C. S. Smart, and she made her mark, and opposite her signature and mark appears this notation signed by Smart: ''The testatrix's name was signed by me to the foregoing will at her request.''  Following this the attestation clause was signed properly by Echols and Smart.   Appellant argues that, having signed the testatrix's name for her, Smart thereby became incompetent and disqualified to sign as an attesting witness, for the reason, as stated, that he was, in fact, witnessing his own signature, rather than that of the testatrix.   The error in this argument is in the assumption that the signature of the testatrix was the signature of Smart.   The statute provides for a signature by mark, and this signature was made in conformity with that statute.   Kirby's Digest, section 8013.   We know of no case which supports appellant's contention in this respect; and we think there is no question of public policy involved which prevents the person who witnessed the mark from being an attesting witness to the will.   In fact, the thing done is to witness and attest the signature of the party making the will, and a signature by mark is at last a signature, and may be attested as such. *Abraham* v. *Wilkins,* 17 Ark. 292; *In re Will of Cornelius,* 14 Ark. 675; *Guthrie* v. *Price,* 23 Ark. 396; *Hightower* v. *Hightower,* 193 S. W. 518, 128 Ark. 95.

(4)   Appellant specially complains of the refusal of the court to give instructions numbered 13 and 18.   This instruction numbered 13, among other things, told the jury that there was no valid will unless the testatrix had sufficient understanding to comprehend the nature and extent of her property, and to whom she desired to and was giving it, without the aid of any person.   But, as has been stated, the law of that subject was fully declared in a number of instructions which were given. Instruction

numbered 18 told the jury that before they could find in favor of the will they must find that the testatrix knew of her own knowledge that this will was the last will she had drawn. Counsel say that the refusal to give this instruction was prejudicial error, because the jury might have found that, even though the testatrix did have testamentary capacity to make a valid will, that the will offered for probate was not her will unless she knew the provisions of the particular will which she was executing. Neither the pleadings in the case nor the testimony presented any issue of any imposition upon the testatrix in having her execute one will when it was her purpose to execute another. It is true the testatrix was blind, and necessarily had to depend on some one else to read the will and her condition might have rendered an imposition in the way of substitution possible; but, as has been stated, there is no testimony in the record upon which to base a conjecture even that any such thing was done here, and the instruction numbered 18 was, therefore, properly refused.

The testimony does show that for a number of years prior to her death the testatrix had lived in the home of the man whom she named as her executor; and it is true that contestant contended that this executor and his wife exercised undue and improper influence over the testatrix in the preparation of her will, and caused the testatrix to believe that her son, upon whom she proposed to bestow her benefaction, was profligate and prodigal, and that it would, therefore, be wise to give him his property in trust. Complaint is not made about the quantity of property given by the testatrix to her executor, although, of course, he would take nothing if the will was broken. But it is said that the trust created for the control of the property given contestant indicates both a lack of testamentary capacity, because there was no necessity for the creation of this trust, and that it likewise indicates the exertion of undue and improper influence on the testatrix. No attempt was made to show any personal hostility

between the executor and appellant. But all these questions were submitted to the jury, under appropriate instructions, and have been settled by the verdict in favor of the will.

(5)  In an instruction upon the burden of proof the court told the jury that contestant would have to establish his case by a "fair" preponderance of the testimony; and complaint is now made of the word fair as imposing a necessity of finding the issues by something more than a preponderance. Exceptions were saved to this instruction; but they appear to have been based upon other grounds. At any rate, no specific objection was made to the addition of the word fair. We think a specific objection should have been made to this instruction if counsel thought at the time that the use of the word fair imposed some additional burden, and that a general objection to this instruction was insufficient to raise the question now presented to us. Counsel for appellee cite several instructions set out in the opinions of this court in which the word fair was used in this connection and which were not condemned by this court on that account. They were passed over by us, however, as imposing no additional burden, that question not having been raised. *Kanis* v. *Rogers,* 119 Ark. 120; *Hays* v. *Williams,* 115 Ark. 406; *St. L., I. M. & S. R. Co.* v. *Sparks,* 81 Ark. 187.

(6)  Complaint is also made of the action of the court in giving an instruction numbered 12, which told the jury that the testatrix had the right to appoint, in her will, any one whom she deemed proper as executor of the estate. And likewise against an instruction numbered 13, which told the jury that the probate court had the right to remove the executor and appoint another in his place. These instructions correctly declared the law, as the probate court would have the right of removal under proper case made, sec. 37, Kirby's Digest; and we think they are not erroneous as charging upon a question of fact or the weight of testimony. It was not improper, under the issues of this case, where the creation of the

trust appears to be the thing chiefly complained of, for the court to so declare the law.

Other questions are raised; but we think they are disposed of by what we have already said, or that they are not of sufficient importance to require further discussion. The jury has found, under correct instructions, that the testatrix has made a valid will, and we cannot, therefore, pass upon either the wisdom or necessity of the trust which it created. Judgment affirmed.