MALONEY *v.* STATE EX REL. PROSECUTING ATTORNEY.

Opinion delivered October 27, 1930.

*June P. Wooten,* for appellant.

*A. B. Cypert,* Prosecuting Attorney, *F. A. Isgrig, Grover T. Owens* and *A. F. House,* for appellee.

SMITH, J. The prosecuting attorney of the judicial circuit in which the city of Little Rock is situated, together with the members of the grievance committee of the Little Rock Bar Association, filed charges in the circuit court against Laurence C. Maloney for his disbarment as an attorney-at-law, pursuant to the provisions of §§ 610-626, C. & M. Digest.

Three separate charges were presented, and the respondent was found guilty upon each of them by nine of the jurors who tried the case, and the separate verdicts returned upon each of these charges were signed by the nine jurors. Upon the verdicts thus returned the circuit court pronounced a judgment permanently disbarring the

respondent, and this appeal has been prosecuted to review that judgment.

Testimony tending to sustain the charges preferred was to the following effect: Mrs. A. C. Harding had some money which she had put at interest, and in doing so had been assisted by one Douglass, whose full name does not appear to have been stated. It became necessary for Mrs. Harding to employ an attorney to collect these loans, and she employed respondent for that purpose. The testimony clearly shows that the relation of client and attorney was established, and respondent admits that Mrs. Harding paid him a fee of $100 in making these collections, and for other services subsequently rendered she paid him a fee of $15.

This business was transacted with such satisfaction to the client that the attorney appears to have completely gained her confidence. Respondent represented to Mrs. Harding that he had occasional applications for loans, which he could make for her account, and that he could and would guarantee that the loans would be safe and be properly secured, and we think the jury was warranted in finding that in the first two transactions thereafter had between these parties Mrs. Harding was warranted in assuming that respondent was acting as her attorney.

The first of these transactions was as follows: Maloney represented that he had a friend named Wilson, who wanted to borrow $500 on the security of a diamond ring worth $1,200, and Mrs. Harding made the loan on the recommendation of Maloney, who represented that he had taken a proper note. Mrs. Harding gave Maloney a check for the $500, payable to Wilson's order, which, after being apparently indorsed by Wilson and by Maloney also, was cashed. The ring was retained by Maloney, for the reason that Mrs. Harding had no secure place to keep it.

The second transaction was of a similar nature, and involved an ostensible loan of $250 to a man named Barks-

dale upon another diamond ring, which Maloney also kept in his possession.

The testimony amply supports the finding that these transactions were fictitious, and were mere subterfuges by means of which Maloney obtained the use of Mrs. Harding's money for his own purposes, although he did have two diamond rings which he exhibited to her as the security for the loans which he represented that he had made.

It is difficult to disassociate these transactions from the existing relation of attorney and client, and the jury did not do so. There was nothing in either of these transactions to indicate that Mrs. Harding did not regard Maloney as her agent and attorney to negotiate these loans and to see that they were properly secured. Maloney was not in the brokerage business, and, while he does not appear to have made any separate charges for his services in these transactions, they appear to be an incident to the relation of attorney and client existing between the parties, and were induced by the confidence which that relation had inspired. Mrs. Harding trusted Maloney to see that proper notes were taken, as she supposed, and to keep the rings which gave the notes their value.

The relation of attorney and client is not limited to trial of cases or to work connected with the courts. Many duties are entrusted to attorneys which might be performed by a layman, the lawyer being chosen, not because litigation is contemplated, but because the proper discharge of the duty requires some knowledge of the law, which leads the client to assume that the lawyer could more safely transact the business. We think the transaction about the rings were of that character, although no specific fee was paid or charged for that service, because the transactions grew out of and were related to the existing relation of attorney and client. They were related to the business for the transaction of which Mrs. Harding had employed and paid Maloney, that of lending money.

After procuring these fictitious loans to himself, Maloney made application for a direct loan to himself of $800, and the third charge was based upon this transaction, the history of which is stated in the opinion of this court in the case of *Maloney* v. *Harding*, 181 Ark. 1075, 29 S. W. (2d) 290.

To secure this $800 loan Maloney gave a mortgage on the south half of a quarter section of land which he owned. After giving this mortgage Maloney retained it in his possession for a short time, when he gave it to Mrs. Harding, and she, after keeping it in her possession for some time, returned it to Maloney, but she had in her possession at all times the note for the $800 which the mortgage secured. It would be difficult to find a case of more simple faith or more trusting confidence, and it is not to be doubted that this faith and confidence arose out of the relation of attorney and client, which had never been terminated.

Maloney reported to Mrs. Harding that certain interest had been paid on the loans secured by the rings, but he later reported that default had been made in this respect. He also made default in the payment of the loan secured by the mortgage and of the interest thereon. Mrs. Harding saw Maloney frequently about these payments, and finally became importunate, and it is certain that he was not candid with her about these transactions. It finally became necessary for her to incur the expense of employing an attorney to make the collection in each of these three cases, and this attorney frequently called upon Maloney demanding payment, and the same lack of candor on Maloney's part continued, although he finally admitted to the second attorney that he had not, in fact, made the loans to Wilson and Barksdale, but at the trial from which this appeal comes he denied having made that admission.

It appears from the opinion in the case of *Maloney* v. *Harding, supra,* Maloney sold the entire quarter section of the land upon the south half of which he had given

the mortgage to Mrs. Harding, and as her mortgage had not been placed of record, Maloney's purchaser took the title to the entire tract free of the mortgage lien. In that case we reversed the judgment imposing the statutory penalty under §§ 2453-2455, C. & M. Digest, for the reason that it had not been shown that the effect of the sale of the land by Maloney was to denude him of all his property, not leaving enough to pay his creditors.

It was shown that, immediately upon the remand of that cause, Maloney paid Mrs. Harding the amount there adjudged to be due, and it was also shown that Maloney paid Mrs. Harding the amount of the loans made on the two rings, with interest thereon, but these payments were not completed until after the disbarment proceeding had been instituted.

It is very earnestly insisted that, as this showing was made and was admitted to be true, Mrs. Harding has not been damaged, and that as she has received her money it is now immaterial that she may have been deceived in regard to the loans on the rings. But the transactions cannot thus be rendered innocuous. Mrs. Harding was deceived in the first instance, and was later delayed and annoyed, and has incurred the expense of employing another attorney and of having a lawsuit.

At respondent's request the court gave an instruction numbered 11, which reads as follows: "You are instructed that to constitute an improper retention of a client's money sufficient to warrant disbarment, some element of fraud or dishonesty must appear' from the evidence. In other words, mere nonpayment of money by an attorney is insufficient as a ground for disbarment, in the absence of fraud or dishonesty in the retention of money."

It thus appears that, before finding respondent guilty upon any of the charges, the jury was required to find that "some element of fraud or dishonesty must appear from the evidence," and without further review of the

testimony, we announce our conclusion that the testimony was sufficient for this purpose.

It is objected that other instructions permitted the jury to make this finding upon a mere preponderance of the evidence, whereas the finding should have been permitted only upon evidence that was clear and satisfying, such as would be required in a criminal case.

We said, however, in the case of *Wernimont* v. *State*, 101 Ark. 210, 142 S. W. 194, Ann. Cas. 1913D, 1156, that "Proceedings for the suspension or disbarment of attorneys for professional misconduct are not criminal, but civil in their nature. They are not instituted or intended for the purpose of punishment. Their object is to preserve the purity of the courts and the proper and honest administration of the law. Attorneys are officers of the court, made so by its order when they are admitted to practice therein. The purpose of the proceedings for suspension and disbarment is to protect the court and the public from attorneys who, disregarding their oath of office, pervert and abuse those privileges which they have obtained by the high office they have secured from the court. The right to practice law is not an absolute right, but a privilege only. It is but a license which the court grants by its judgment of admission to the bar, and which the same court may revoke whenever misconduct renders the attorney holding such license unfit to be entrusted with the powers and duties of his office. The revocation of such license is therefore only a civil proceeding, governed by the rules applicable to all civil actions."

As we have announced the rule to be followed in this State in proceedings of this character, no occasion arises to consider the rules prevailing in other jurisdictions. Having held that this is a civil proceeding, it is governed by the rules applicable in such cases, and it has been held error to require that the material allegations in cases of that character be established by anything more than a preponderance of the evidence. *Hays* v. *Williams*, 115 Ark. 406, 171 S. W. 882; *Bocquin* v. *Theurer*, 133 Ark.

448, 202 S. W. 845; *Sealy Mattress Co.* v. *Southern Cotton Oil Co.*, 167 Ark. 405, 268 S. W. 611; *Whaley* v. *Nivin*, 175 Ark. 839, 1 S. W. (2d) 3.

It is finally insisted that the judgment of the court permanently disbarring respondent is unnecessarily severe; that the court was not required to make this order, and that the ends of justice would have been subserved by suspending respondent for some fixed period of time only. The case of *State* v. *Huddleston*, 173 Ark. 686, 293 S. W. 353, is cited to support this contention. There the attorney was disbarred for the period of one year only, and we affirmed that judgment. The appeal in that case was prosecuted by the local bar association, which had instituted the proceeding, for the purpose of making the disbarment order permanent. We there said, however, that the statute under which both that proceeding and this was conducted requires the trial court, in all cases of conviction, to pronounce judgment of removal or suspension according to the facts found, and vested the trial court with discretion either to remove or suspend according to the facts found, and that "Where the trial court is vested with judicial discretion, it has always been the rule of this court not to reverse the trial court in the exercise of such discretion, unless, in the judgment of this court, under the facts presented, the trial court in its ruling has abused its discretion."

Under the facts in this case we are unable to say that there has been an abuse of discretion, and the judgment of the court below must therefore be affirmed, and it is so ordered.

Hart, C. J., Kirby and Mehaffy, JJ., dissent.

Per Curiam on rehearing. In the early case of *Beene* v. *State*, 22 Ark. 149, the court quoted with approval the language of Chief Justice Marshall in Ex parte *Burr*, 9 Wheat. 530, as follows: "On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought

not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised; and no other tribunal can decide, in a case of removal from the bar, with the same means of information as the court itself. If there be a revising tribunal, which possesses controlling authority, that tribunal will always feel the delicacy of interposing its authority, and would do so only in a plain case.''

This rule has been followed and applied according to the varying facts of each particular case since that time. *Wernimont* v. *State,* 101 Ark. 210, 142 S. W. 194, Ann. Cas. 1913D, 1156; *Nichols* v. *Little,* 112 Ark. 213, 165 S. W. 301; *Craig* v. *Sims,* 160 Ark. 269, 255 S. W. 1; *State* v. *Huddleston,* 173 Ark. 686, 293 S. W. 353; *McGehee* v. *State,* post p. 603; and the original opinion in this case.

After mature deliberation, with the full sense of our responsibility and delicacy in reviewing the action of the lower court, the majority is of the opinion that the judgment of disbarment should be set aside and that the protection of the public, the ends of justice, and the atonement of appellant for the offense committed will be attained by his suspension from the practice of the law for a period of one year from the date of disbarment in the court below. The grounds of disbarment relate to the professional conduct of appellant. It was not shown that he was guilty of unprofessional conduct of a continuing character. He was only found guilty by the jury of a single offense. His past conduct at the bar had been of an exemplary character, in so far as the record discloses. The office of an attorney is his property; it is the capital from which his income is derived. Disbarment is the severest penalty known to the law; and, when all the circumstances are considered together, we believe

that the harshest penalty of the law should not be pronounced against the appellant, and that his suspension from the practice for one year will enable him to regain his former character as a lawyer and warrant him in returning to the practice again. It is so ordered.

SMITH and HUMPHREYS, JJ., dissent.