BONA *v.* THOMAS AUTO COMPANY.

Opinion delivered January 13, 1919.

1. MUNICIPAL CORPORATIONS—USE OF HIGHWAY—AUTOMOBILES.—The same general principles are applicable to an automobile as to other vehicles upon a public highway; the driver thereof being required to use that degree of care which a person of ordinary prudence would exercise under similar circumstances.

2. MUNICIPAL CORPORATIONS—USE OF ROAD—SPEED.—Both under the general law, as well as under the statute (Acts, 1911, p. 101), it is the duty of an automobile driver when going around a corner or approaching a curve, where his view is obstructed, to reduce his speed and take such care as the situation demands.

3. MUNICIPAL CORPORATIONS—USE OF STREET—CARE REQUIRED.—The driver of an automobile in turning a corner must use such care and caution as a prudent person would have used under the same circumstances, even though he does not exceed the speed limit fixed by Acts 1911, p. 101, § 10.

4. MUNICIPAL CORPORATIONS—USE OF HIGHWAY—QUESTION FOR JURY.—Where defendant drove his automobile at a rate exceeding

the statutory speed limit in going around a corner, and because of a defective steering gear ran over the curb and struck decedent while on the steps of his home, the issue of negligence was for the jury.

5. MUNICIPAL CORPORATIONS—USE OF ROAD—QUESTION FOR JURY.— In an action for death of plaintiff's child by defendant's automobile, where defendant claimed that a defective steering gear was the sole proximate cause and plaintiff claimed that the injury was caused by driving at excessive speed, the question was one for the jury.

6. NEGLIGENCE—PROXIMATE CAUSE.—If, subsequent to the original negligent act, a new cause has intervened, of itself sufficient to stand as a cause of the injury, the original negligence is too remote.

7. NEGLIGENCE—CONCURRING CAUSES—Where two concurring causes produce an injury which would not have resulted in the absence of either, a party responsible for either cause is liable for the consequent injury.

8. EVIDENCE—TESTS.—Where it was contended that the killing of plaintiff's child was due to a defective steering gear, it was not error to admit evidence as to a test of the same steering gear, it appearing that it was in the same condition at the time of the test as at the time of the accident.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

April 23, 1917, James Bona, Jr., was run over and killed by an automobile. He was a little over three years of age, and was standing on the steps of his home at the southeast corner of Fourth and Spring streets, Little Rock, Arkansas. The car was being driven by L. G. Hinkson, an employee of S. R. Thomas Automobile Company and S. R. Thomas, who at the time had the possession and control of the car.

This suit was instituted by Jim Bona, Sr., appellant, as administrator of the estate of James Bona, Jr., against S. R. Thomas Auto Company and S. R. Thomas, appellees. Appellant sued for the benefit of himself as the father and sole heir of Jim Bona, Jr., deceased, and also for the benefit of the estate of the deceased to recover

damages for the injury sustained in the killing of Jim
Bona Jr.

The complaint alleged, "that the driver was operat-
ing the automobile around the corner of Fourth and
Spring streets, at a reckless rate of speed and without
having his automobile under control, and that by reason
of said carelessness and negligent running and operating
of said automobile, intestate was struck and fatally in-
jured."

The answer specifically denied all the allegations of
the complaint.

The testimony adduced on behalf of the appellant
on the issue of negligence is substantially as fol-
lows: One witness testified that he got off the street car
at Fifth and Spring streets and as he was going
north on Spring street towards Fourth a car passed
him going going north "at a terrible rate." When
the automobile went to turn the corner going east on
Fourth street "it looked like it was going so fast
it lifted him (driver) off of his seat as he went to turn.
The car passed witness about middle of the block between
Fourth and Fifth streets about 150 feet from the corner
of Fourth. Witness proceeded to the corner of Fourth
and found that the child had been run over. The car was
running when it passed witness twenty-eight or thirty
miles an hour, and its speed attracted witness' attention.
Witness was going in the same direction that the car was
going and watched it until it turned the corner. Witness
did not know either Hinkson or Thomas and had no in-
terest one way or the other in the case.

Another witness, a colored man working for Under-
wood Typewriting Company, going south between Third
and Fourth on Spring street noticed a car coming north
on Spring street about the middle of the block between
Fourth and Fifth. Witness had driven a car himself.
Witness drove at a speed of between fifteen and seven-
teen miles per hour and the car that witness saw was go-
ing faster than witness drove. In describing how the
driver turned the corner witness stated: "It was going

fast, for the man had to snatch his gear that way (indicating), raise up in his seat; you could tell from the rate he was raising that he had to snatch it to turn it; he couldn't have made the turn at the rate the car was going without snatching it. He had to jerk it." Further along the witness said: "The car was meeting me and I stopped. I noticed how the car was running, and he went to go in that curve and I stood there to get behind a big tree that was standing there, because I had heard of cars getting out from under the control of men, and I had seen cars get out from under control when I was riding in them. * * * I got ready to get behind that tree to keep from getting hit. The car was coming mighty fast, between twenty and twenty-five miles, I guess, and if it got from under his control it could come up on the sidewalk and hit me. He turned the corner at about a speed of twenty-five or thirty miles, I couldn't say just how fast it was going." Witness decided to get in a safe place not knowing the driver intended to turn down Fourth street until he snatched the car.

Another witness, a minister in charge of a church in Argenta, was in front of his boarding house, the second house from the corner on the east side of Spring street, and saw this car passing. It was going north on Spring and turned east at the southeast corner of Fourth. It was about twenty feet from the corner when witness first saw it. Witness saw the car when it struck the curbing and then struck the steps. It struck the curb two or three feet from the corner, ran up on the sidewalk six or eight feet then struck the steps. The child was either on the first or second step Witness' attention was first attracted to the car because it was going very rapidly. Witness had seen several pass there very rapidly before and witness had to cross over Spring street to go to his home on Broadway and he was cautiously looking out for cars because he did not wish to be run over.

There was testimony adduced by the appellees tending to prove that the car in controversy was being driven

on Spring street at from 8 to 12 miles per hour and as it turned the corner at Fourth and Spring it was not going so fast. That a car going ten miles an hour on a level straight street with no dampness could be stopped with perfect brakes in fifteen feet.

One witness testified, over the objecton of the appellant, that either the day following or the second day following the accident he examined the car that caused the injury while it was in the possession of Thomas. The car was not running when he examined it. The car was locked, "that is when the steering wheel is cramped over to the right to the full limit it was impossible to turn it back without a terrific strain." If turned as far as the wheel would allow it would lock. Witness could not say what it would do if it was not turned all the way. It locked while standing still. The car could be driven straight ahead without locking but could not make a right angle turn around a street corner. Witness was an expert automobile man.

Another witness, an expert in automobile engineering, testified over objection of appellant that he was particularly familiar with the steering gear of the Dodge car. He was permitted over the objection of the appellant to exhibit the steering gear of an automobile made by the Dodge people and to explain the manner of its construction and how it worked. Witness went into detail giving reasons why the steering of a Dodge car after it had been driven for any length of time would cause the assembly to get loose and cause the gear to lock when turned to either the right or the left. Witness had not examined the car that caused the accident but the general principle of the machinery was the same in that car as in the car owned by witness, which was a Dodge, and which on two occasions had jammed on him.

There was testimony tending to show "there was no damage done to the car whatever by the collision."

Over the objection of the appellant witnesses were permitted to testify that a day or two after the injury a test or locking of the steering gear of the car that pro-

duced the injury was made in front of appellee's place of business, and it was found that by turning the steering gear as far as it could be turned either way it would lock the car.

Over the objection of the appellant a witness who had visited the scene where the injury took place was permitted to introduce a map or plat showing the location of the occurrence and measurements showing distances, *et cetera,* of the various objects disclosed by the testimony. The plat or drawing was made the day before the witness testified which was one year after the accident occurred. It was made from typewritten record of measurements that witness had taken at the time he visited the scene of the injury, on the day after the occurrence.

The driver of the automobile testified that, after he turned the corner, when he found that he could not turn the car back into the street by the use of the steering gear he began to use the foot brakes in an effort to stop. He did all that a man could do to stop. It all happened in an instant.

The appellant presented various prayers for instructions which the court refused to grant and to the ruling of the court the appellant duly excepted. The court gave appellee's prayer number one as follows:

"You are instructed to find for the defendant." To which ruling appellant duly objected and excepted. The jury returned a verdict in favor of the appellees and from the judment rendered in their favor is this appeal.

*Robert L. Rogers* and *Geo. W. Hays,* for appellant.

1. It was clearly error to direct the verdict of the jury. If it directed the verdict on the theory that the alleged locking of the steering gear caused the injury, and that this alone was the proximate cause of the injury, the action of the court cannot be upheld, because the fact that Hinkson was the only one who testified that the steering gear locked, and that no one controverted, nor was in position to controvert, that statement, does not, in law, render his evidence on that point undisputed. 82 Ark. 86; 88 Ark. 550; 114 Ark. 393; 89 Ark. 273; 76

Ark. 132. If defendant's testimony be taken as true that the automobile was running at a speed not exceeding ten miles an hour, that was *prima facie* negligence. Acts 1911, p. 101. And was the proximate cause of the injury. 108 Ark. 326.

Under the evidence introduced, the question whether or not the driver was guilty of negligence which produced the injury, and whether the steering gear did or did not lock, was for the jury, if the testimony was such that reasonable and fair-minded men might reach different conclusions therefrom. 89 Ark. 522; 131 Ark. 197.

We contend that the steering gear did not lock, but that the driver lost control through his own reckless, careless and negligent driving; but if it be conceded that the steering gear did lock, yet, if the driver's reckless speed and negligence concurred and combined with the alleged locking of the gear in producing the injury, appellant is entitled to recover, and the case should have gone to the jury, *supra.* 108 Ark. 326; 71 Ark. 445; 97 Ark. 576, 584.

The intervention of unforeseen and unexpected cause alone is not sufficient to relieve a wrongdoer from the consequences of his negligence, if such negligence directly and proximately co-operates with the independent cause in the resulting injury. 195 S. W. 251; 193 S. W. 971; 186 S. W. 619; 117 Ark. 457.

2. The testimony relating to the test of the steering gear, made after the collision, was incompetent, and should not have been admitted. 59 Ark. 111; 115 Ark. 101; 117 Ark. 457.

*Mehaffy, Reid, Donham & Mehaffy,* for appellant.

Counsel review the evidence and contend that, with such a short interval of time and space involved, no one, *at any rate of speed,* could have escaped the outcome which took place; that it was established by actual demonstration that a car moving slowly would ascend the curbing and travel over the sidewalk in the same manner as did the one Hinkson was driving. Speed, therefore, could not have contributed to cause the injury, since the

same effect would have resulted whether the car was going rapidly or slowly; but the fact that there was no damage done to the car negatives the presumption of speed. Hinkson assumed, as he had the right to do, that the car would respond to the steering as it ordinarily did, and it was not until he had mounted the sidewalk that he was aware of abnormal conditions. There can be no liability unless his *negligence* was the cause of the abnormal condition.

The proximate cause of the injury was not attributable to Hinkson's negligence, and that was the theory on which the court's instruction was based. Thompson on Trials, § 1676.

If it be assumed that the car was running at an unlawful rate of speed, and was, therefore, *prima facie* negligence on the part of Hinkson, it is clearly demonstrated, nevertheless, that it was not the speed that was the cause of the accident. Thompson on Negligence (2 ed.), § 45.

If there is some other intervening cause, of itself sufficient to cause the injury complained of, the original act of negligence is too remote. 87 Ark. 576; 97 Ark. 160; 144 Fed. 605; 72 Ill. App. 662; 112 Ill. App. 366.

WOOD, J., (after stating the facts). Although traveling by automobiles is comparatively new, yet, the same general principles are applicable to them as to other vehicles upon the public highway. The driver of such vehicles must use that degree of care and caution which a person of ordinary prudence would exercise under similar circumstances. As was stated by us in the recent case of *Carter* v. *Brown,* 136 Ark. 23: "The degree of care which the drivers of automobiles are bound to exercies is commensurate with the dangers to be anticipated and th the injuries that are likely to result from the use of vehicles of that character. The more dangerous the character of the vehicle, of course, the greater the degree of care required in its operation." See also *Minor* v. *Mapes,* 102 Ark. 351-54.

Our statute provides, among other things: "No person shall drive a motor vehicle or motor bicycle upon any public highway in this State at a speed greater than is reasonable and proper, having regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person.   *   *   *   If the rate of speed of a motor vehicle or motor bicycle operated on any public highway in this State, in going around a corner or curve in a highway where the operator's view of the road traffic is obstructed, exceed six miles an hour, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle or motor bicycle is running at a rate of speed greater than is reasonable, having regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person." Act 134, Acts of 1911.

In *Bain v. Fort Smith Light & Traction Co.*, 116 Ark. 126, we held, that if a street car which caused an injury was being operated at the time in a manner that violated an ordinance of the city such fact might be shown as tending to establish the allegations of negligence." See also *Pankey v. Little Rock R. R. & Elec. Co.*, 117 Ark. 337; *Ward v. Fort Smith Light & Traction Co.*, 123 Ark. 548; *Carter v. Brown, supra.*

But aside from any statutory provisions, "it is the duty of an automobile driver when approaching a turn in the highway, or other place where extra precaution may be required to insure reasonable safety, to reduce his speed and take such care as the danger of the situation demands." Berry on Automobiles, sec. 138, p. 160. See also *Fairchild v. Fleming*, 125 Minn. 431.

In speaking of the care required in the operation of an automobile at a street corner it is said in *Buscher v. N. Y. Transportation Co.*, 106 App. Div. (N. Y.), 493-495: "Due care in its operation requires in such circumstances that the vehicle should be slowed down and operated with caution."

The true test in all cases is whether or not the driver has used such care and caution as a careful and prudent

person would have done under the same circumstances, and a driver of automobiles is not exempt from negligence by simply showing that at the time of the accident he was not running at a rate of speed greater than that allowed by law. For ordinary care under the circumstances of the particular case might require that he be operating his machine at even a lower rate of speed than the limit fixed by law. To enable him to avoid a collision with another person ordinary care might require that he should have his machine under such control that he not only could slow up but also stop. Huddy on Automobiles, sec. 271, p. 292; *Thies* v. *Thomas,* 77 N. Y. Supp. 276; 2 R. C. L. 1184, sec. 19, note; 4 Ann. Cas. 400, note "Automobiles"; 108 A. S. R. 214, note; *Cumberland Tel. & Tel. Co.* v. *Yersir,* 141 Ky. 16-19-20.

Applying these principles to the facts set forth in the statement the issue of negligence raised by the pleadings was clearly one for the jury.

But the appellees contend that "there was no proof tending to show that the speed of the automobile, regardless of what its rate might have been, was the cause of, or, in any way contributed to, the injury." Their counsel urge that the undisputed evidence shows that the proximate cause of the injury was the defective condition of the steering gear, of which the driver had no knowledge, which caused the car to lock and thus produce the injury.

This contention cannot be sustained for the reason that it ignores entirely the testimony adduced on behalf of the appellant tending to prove that the car turned the corner at a high rate of speed, and from which the jury might have found that the proximate cause of the injury was the negligent failure on the part of the driver of the car to lessen his speed on approaching and in turning the corner so as to have enabled him to stop before it struck the child notwithstanding the defect in the steering gear.

There was no testimony to the effect that the brakes were not working properly and there was testimony to warrant a finding that if the car had been running at a low rate of speed it could have been stopped before it hit the steps where the child was standing.

True there was testimony on behalf of the appellee tending to show that the proximate cause of the injury was a defect in the steering gear which caused the same to lock and which defect was not discovered by the driver until it was too late in the exercise of ordinary care by the use of the brakes to stop the car and prevent the injury.

The theory of the appellees, as above stated, was that the defective steering gear was the independent, sole, and proximate cause of the injury and not the speed of the car. And there was testimony to sustain this theory.

The theory of the appellant was that the car was being driven at a negligent rate of speed, which alone was the proximate cause of the injury, and that this rate of speed caused the locking of the steering gear, if same was locked. But if mistaken in this, and the steering gear could be considered also as an independent cause, that the negligent rate of speed at least concurred proximately with the defective steering gear in causing the injury. There was testimony to sustain these theories of the appellant.

The theories of the respective parties were in conflict and it was a question for the the jury, under proper instructions, to determine which theory was correct.

"It is a well settled general rule," says this court in *Pittsburg Reduction Co.* v. *Horton,* 87 Ark. 576-579, "that if, subsequent to the original negligent act a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original negligence is too remote. See also *Ark. Valley Trust Co.* v. *McIlroy,* 97 Ark. 160. Others to the same effect are, *American Bridge Co.* v. *Seeds,* 144 Fed. 605; *City of Peoria* v. *Adams,* 72 Ill. App. 662; *Terminal R. R. Assn.* v. *Larkins,* 112 Ill. App. 366.

It is equally well settled by the decisions of our own and other courts that "where two concurring causes produce an injury which would not have resulted in the absence of either, the party responsible for either cause is liable for the consequent injury." 3rd Syllabus, *St. L. S.*

*W. R. R.* v. *Mackey,* 95 Ark. 297, and cases there cited. *Helena Gas Co.* v. *Rogers,* 104 Ark. 59, and other cases cited in appellant's brief.

The complaint does not charge that appellees were negligent in causing the operation of an automobile which had a defective steering gear, and, therefore, under the pleadings this must be treated as if it were an independent act of some third party.

It would unduly prolong this opinion to discuss the rulings of the court upon the appellant's prayers for instructions. What we have already said will be sufficient to guide the court in declaring the law applicable to the facts if they remain the same as disclosed by this record.

We find no errors in the rulings of the court in admitting the testimony as to the test made, in front of appellee's place of business, of the steering gear of the automobile which caused the injury. The steering gear was in the same condition at the time of this test as it was at the time of the accident. *R. R.* v. *Michael,* 115 Ark. 101; *St. L., I. M. & S. Ry. Co.* v. *Kimbrell,* 117 Ark. 457.

No objection was offered to the testimony as to any other test.

For the error in granting appellee's prayer for instruction number one the judgment is reversed and the cause is remanded for new trial.