## CENTRAL FLYING SERVICE v. CRIGGER.

4-8715                                    221 S. W. 2d 45

Opinion delivered May 30, 1949.

Rehearing denied July 4, 1949.

*Buzbee, Harrison & Wright,* for appellant.

*J. J. Screeton* and *Miles & Amsler,* for appellee.

ED. F. McFADDIN, Justice. This action is an effort to hold appellants liable because they rented an airplane to a person whose conduct caused the death of appellees' son.

Appellants, Garbacz and Holbert, are partners owning and operating the Central Flying Service in Little Rock. Vernon Wilkerson was a young man interested in aviation. He held a student's permit which allowed him to rent and fly a plane, but not to carry passengers. On March 23rd Wilkerson rented a plane from appellants for three days in order to fly to Forrest City and attend a fraternity convention; and while there, on March 24th, he took his fraternity brother J. W. Crigger, on a flight. The plane crashed and both Wilkerson and Crigger were killed.

Appellees (plaintiffs below), as the parents and legal representatives of Crigger's estate, brought this action against appellants (defendants below) to hold them liable for his death. The theory of alleged liability was: (1) that Wilkerson was notorious for his recklessness[1] in the operation of an airplane; (2) that Crigger was killed because of the said recklessness[2] of Wilkerson; (3) that appellants had actual or imputed knowledge

---

[1] For brevity, we have used here the word "recklessness." The complaint used a more comprehensive term, *i. e.,* "wilfull and wanton negligence and misconduct." In this opinion "recklessness" includes the comprehensive term.

[2] See footnote preceding.

of Wilkerson's recklessness;[3] and (4) that in renting the plane to Wilkerson with such knowledge, the appellants became liable for all of his acts. Appellants denied liability; but a jury trial resulted in a verdict and judgment against appellants; and this appeal challenges that judgment.

We are presented with the question of the tort liability of one who rents an airplane to another; and very few relevant cases can be found. In Brewer v. Thompson, *ante,* p. 164, 219 S. W. 2d 758, a person legally riding as a passenger in a rented plane being operated by the bailee sued the bailor for damages, on the theory that the plane was defective. We denied recovery, because there was no proof of negligence on the part of the bailor. The decision in that case turned on the absence of negligence. In 4 A. L. R. 2d page 1306 there is an annotation entitled, "Tort liability of one renting or loaning airplane to another"; and this annotation comments on the paucity of cases and also the failure of even the few cases to bottom the holdings on a uniform legal principle.

Arkansas has never adopted the Uniform Aeronautics Act; instead, the Arkansas General Assembly of 1941 by § 13 of Act 457 provided:

"The liability of the owner or pilot of an airplane carrying passengers, for injury or death to such passengers, shall be determined by the rules of law applicable to torts on the lands or waters of this State arising out of similar relationships." Both sides to the present litigation concede the validity and applicability of the quoted section. Since the bailment of a motor vehicle presents, in many instances, an analogous situation to the bailment of an airplane, we turn, then, to the automobile cases for applicable rules. Our cases recognize that one who rents an automobile to a known reckless

---

[3] The Uniform Aeronautics Act was approved by the National Conference of Commissioners on Uniform State Laws in 1922. It may be found in vol. eleven, Uniform Laws Annotated, page 157. On page 274 of the 1948 Cumulative Annual Pocket Parts for said vol. 11, it is stated that this Uniform Aeronautics Act was withdrawn by the National Conference of Commissioners on Uniform State Laws in August, 1943.

driver is liable for the damages which reasonably and proximately result from the reckless driving of such bailee. See Layes v. Harris, 187 Ark. 1107, 63 S. W. 2d 971; Chaney v. Duncan, 194 Ark. 1076, 110 S. W. 2d 21; McAllister v. Calhoun, 212 Ark. 17, 205 S. W. 2d 40.

Apparently attempting to follow the rationale of these cases, the trial court instructed the jury, at the request of the plaintiffs, and over the general and specific objections of the defendants, as follows:

"You are, therefore, instructed that if you find from a preponderance of the evidence in this case that the defendant, Central Flying Service, leased or rented an airplane to Vernon Wilkerson as alleged in the complaint and if you further find from a preponderance of the evidence that at the time said airplane was rented or leased to Vernon Wilkerson the defendant knew, or by the exercising of ordinary care could have known, that Vernon Wilkerson by reason of his want of age or experience, his physical or mental condition, or his known habit of recklessness was incompetent to safely operate the airplane, and if you further find from the evidence that because of reckless and negligent operation of said plane, if any, by Vernon Wilkerson, J. W. Crigger lost his life you are told as a matter of law that the action of the defendant(s) in leasing or renting said airplane to Vernon Wilkerson will be deemed to be the proximate cause of the death of J. W. Crigger and your verdict will be for the plaintiffs."[4] A careful review of the record discloses sufficient evidence to take the case to the jury on the questions (1) whether Wilkerson was notorious for his recklessness; (2) whether Crigger was killed because of said recklessness; and (3) whether the appellants had actual or imputed knowledge of Wilkerson's recklessness. But we hold that there was no sufficient evidence to support the finding that the appellants could have reasonably anticipated that Wilkerson would take a passenger in the plane while he had it rented.

[4] The latter portion of this instruction is erroneous.

According to the rules of the Civil Aeronautics Board,[5] which are controlling here, anyone sixteen or more years of age, who satisfactorily passes a mental and physical examination, may receive a student permit; after six hours of flying with an instructor—and upon approval of the instructor—the student is eligible for a solo flight; after other required hours of solo flying, the student may take a cross-country flight with an instructor, and then a solo cross-country flight; upon completion of 35 hours of flying, and with the approval of a recognized instructor, the student becomes eligible for a pilot's license. Only a person holding a pilot's license is permitted to take a passenger in the plane; but anyone holding a student's permit, who has completed his solo flight and his cross-country flight with an instructor, is eligible to rent a plane from any flying service. Wilkerson held a student's permit, and had completed his solo and cross-country flights, so it was entirely legal for the appellants to rent the plane to him. Wilkerson did not have a pilot's license, so he could not legally take a passenger in the plane.

We find no facts that could have imputed to appellants—when they rented the plane to Wilkerson—any reason to believe that he would take a passenger in the plane in violation of the regulations of the Civil Aeronautics Board. As one witness expressed it, "he was an eager beaver about flying." He was anxious to get his pilot's license. The only former indiscretion, of which he was definitely shown to have been guilty, was one act of low flying which occurred several months before the events here. He had been disciplined for this low flying, and then allowed to resume the renting of planes. No reasonable person could have been required to foresee, on March 23rd when the plane was rented to him, that the next day Wilkerson would endanger his entire avia-

[5] "The Civil Aeronautics Act of 1938" was enacted by the Congress of the United States on June 23, 1938, c. 601. 52 Stat. 977. It may be found in U. S. C. A. title 49, § 401, *et seq.* Under the Civil Aeronautics Act the rules for the licensing of pilots, etc., are prescribed and regulated by the Civil Aeronautics Board. Some of the rules and regulations of the Civil Aeronautics Board were referred to in our recent case of West Memphis Flying Service v. American Aviation, etc., Co., *ante*, p. 6, 219 S. W. 2d 215.

tion career and lose even his student permit, by taking a passenger in the plane.

In our automobile cases previously cited, we have said that one renting a car to a known reckless driver may be liable for injuries resulting from negligence of the driver. But that statement means that the negligence upon the part of the driver must be in the operation of the car; it does not mean that one renting a car to a reckless driver becomes liable for any other act of indiscretion—e. g., kidnapping—done by the driver of the car and not proximately connected with the driving. The damage must flow from the driving of the car, and not from the separate tort of the driver. There is an exhaustive annotation in 168 A. L. R. 1364 entitled, "Common-law liability based on entrusting automobile to incompetent, reckless or unlicensed driver"; and on page 1369 of that annotation there is a section entitled, "Necessity of causal relation between injury complained of and driver's incompetency, inexperience or unfitness." It is there stated:

"Generally, in order to recover against the owner of an automobile on the ground of his negligence in entrusting the automobile to an incompetent driver, for injuries inflicted by the driver's operation of the car, the plaintiff must establish that the injury complained of was caused by the driver's disqualification, incompetency, inexperience, or recklessness. . . . most cases hold that failure to show that the matter of operation of the offending vehicle arose from or was induced by the disqualification alleged, of the driver to whom it was entrusted by the owner, precludes recovery against the latter under the common-law rule embodying the doctrine of liability for entrustment to an incompetent person."

The necessity of establishing causal connection between the negligence of the driver and the resulting damage is so clear that our automobile cases have shown such connection without stating the necessity for its existence. We have many cases on proximate cause and causal connection. In Wisconsin & Ark. Lbr. Co. v. Scott, 153 Ark. 65, 239 S. W. 391 this Court said: "To constitute

actionable negligence, there must be negligence and injury resulting as the proximate cause of it. Proximate cause has been defined as a cause from which a person of ordinary experience and sagacity could foresee that the result might probably ensue.''

Again, in Meeks v. Graysonia, Nashville & Ashdown R. Co., 168 Ark. 966, 272 S. W. 360 this Court said:

''The rule is well established in this State that, in an action for personal injuries, although the defendant may be shown to have been negligent in some manner, yet, *unless the· negligence so shown is the proximate cause of the injury complained of, no recovery can be had on account of said injury.* It has been uniformly held that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence and that it ought to have been foreseen in the light of the attending circumstances. Pittsburg Reduction Co. v. Horton, 87 Ark. 576, 113 S. W. 647, 18 L. R. A. N. S. 905; St. L. & S. F. R. Co. v. Whayne, 104 Ark. 506, 149 S. W. 333; St. L. Kennett & S. E. Rd. Co. v. Fultz, 91 Ark. 260, 120 S. W. 984; Hays v. Williams, 115 Ark. 406, 171 S. W. 882; and Bona v. Thomas Auto Co., 137 Ark. 217, 208 S. W. 306.''

Applying the rules of causal connection and proximate cause to the case at bar, it follows that before the appellants could have been held liable, it was necessary for the appellees to show that the appellants could have reasonably foreseen that Wilkerson, while on his trip to Forrest City, would take a passenger in the plane in violation of the rules of the Civil Aeronautics Board. No such showing was made, nor does the inference arise as a matter of law.

It follows therefore that the judgment of the Circuit Court is reversed, and the cause is dismissed.

Millwee and George Rose Smith, JJ., dissent.

George Rose Smith, J., dissenting. Justice Millwee and I are unwilling to say as a matter of law that the appellants could not reasonably have foreseen the pos-

sibility of Wilkerson's conduct. The renting of the air-plane to a reckless pilot had created a potentially danger-ous situation; so the intervening action by Wilkerson should not be allowed to break the chain of causation unless a reasonable man would regard its occurrence as highly extraordinary. Rest., Torts, § 447. These ap-pellants were engaged in the business of aviation. It is a fact well-known to fliers that "eager beavers" and "hot pilots" often have a tendency to show off their skill by taking up passengers and performing acrobatics. We think it a question of fact whether the appellants ought to have foreseen the possibility of Wilkerson's doing just this. We therefore dissent from the order of dismissal.