Robert P. SEYFER, Jr., and N. J. Lueken, Plaintiffs,

v.

GATEWAY BAKING COMPANY, now Colonial Baking Company of Fort Smith, Defendant.

Civ. A. No. 1379.

United States District Court
W. D. Arkansas,
Ft. Smith Division.

Feb. 14, 1958.

Hardin, Barton, Hardin & Garner, Bryan & Fitzhugh, Ft. Smith, Ark., Spitzberg, Bonner, Mitchell & Hays, Little Rock, Ark., for plaintiffs.

Daily & Woods, Ft. Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

### Statement

The plaintiffs filed their complaint in the Sebastian Circuit Court, Fort Smith Division, on September 18, 1957. The defendant, Colonial Baking Company of

Fort Smith, duly and timely removed the case to this Court.

The plaintiffs alleged that on the 12th day of June, 1957, at approximately 1:30 p. m., plaintiff, N. J. Lueken, was driving his automobile in a generally westerly direction on the Arkoma Highway or South Y Street in the City of Fort Smith, Arkansas, in a careful and prudent manner; that the plaintiff, Robert P. Seyfer, Jr., was riding in the car as a passenger; that as the plaintiff, Lueken, entered the intersection of Wheeler Avenue, the servant and employee of defendant while driving a truck of defendant and acting in the course of his employment, did carelessly and negligently drive the truck into and collide with the automobile owned and driven by the plaintiff, Lueken, and occupied by the plaintiff, Seyfer, as a passenger.

That the defendant and its servant and agent were guilty of negligence in (1) failing to keep a proper lookout, (2) failing to yield the right of way to plaintiffs, (3) failing to keep the truck under reasonable control, (4) driving at a fast and dangerous rate of speed under the circumstances then and there existing, and (5) failing to exercise reasonable care to avoid damages and injury to the plaintiffs after observing them in a position of peril.

That the above acts of negligence were the sole proximate cause of the resulting accident and damages sustained by plaintiffs.

The plaintiffs further alleged that they each received serious personal injuries, incurred medical and hospital expenses, and were damaged by the loss of time from their respective employments as a result of the negligence of the defendant's servant in the operation of its truck. Each of the plaintiffs prays for recovery of damages for personal injuries, medical and hospital expenses and loss of earnings. The plaintiff, Lueken, further alleged that his automobile was damaged in the sum of $1,500, and he prays for recovery of said sum for property damage in addition to the recovery for the personal injuries, medical and hospital expenses, and loss of earnings allegedly sustained by him.

On October 12, 1957, the defendant filed its answer and counterclaim, in which it admitted that a collision occurred on the date alleged in the complaint between the automobile being driven by plaintiff, Lueken, in a westerly direction on South Y Street and a truck of the defendant driven by one of its employees on Wheeler Avenue, or Highway 22 truck route, in a northerly direction in the City of Fort Smith, Arkansas.

The defendant specifically denied the allegations of negligence contained in the complaint, and for lack of information or knowledge sufficient to form a belief denied that plaintiffs received personal injuries, incurred medical and hospital expenses and lost earnings as alleged in the complaint.

The defendant further alleged that the injuries suffered by each of the plaintiffs, if any, at the time and place alleged in the complaint were solely and proximately caused by the negligence of each of the plaintiffs and the contributory negligence of each of the plaintiffs at the time and place alleged in the complaint; that the contributory negligence of each of the plaintiffs exceeds in degree all other negligence contributing to the alleged injuries suffered by each, and is, therefore, a bar to the cause of action of each plaintiff.

By way of counterclaim, defendant alleged that its truck was damaged in the collision in the amount of $455 as a result of the negligence of the plaintiffs, and each of them.

That the plaintiffs on the date alleged in the complaint were both employees of Bopp Beauty and Supply Company of Little Rock, Arkansas, as salesmen, and that they were both acting for said employer in the performance of the duties of their employment, and were upon a joint mission in the performance of their employer's business for their joint and mutual benefit, and were joint adventurers with equal right to control the movements of the vehicle

which they were operating, or, in the alternative, that they were engaged in a joint mission and "one of the plaintiffs was the superior and the other the agent, one of the other, the exact facts as to the status and true relation between the plaintiffs as to the equality or inequality of their authority between themselves being unknown to the defendant, but well known to the plaintiffs, but in either event they were acting for each other upon a common enterprise in the performance of their common employment for the same employer in the furtherance of the latter's business.

"That Wheeler Avenue or Highway 22 truck route, upon which defendant's vehicle was traveling, is a through highway, having been so designated by the State Highway Department and the City of Fort Smith, at the point of its intersection with South Y Street, and plaintiffs' automobile was enjoined by statute and ordinance and by traffic warning signs erected upon said South Y Street to stop before entering the intersection with Wheeler Avenue or Highway 22 truck route."

That the plaintiffs were driving west upon South Y Street at a reckless, dangerous and unlawful rate of speed, without keeping a proper lookout ahead and for other vehicles lawfully traversing Wheeler Avenue or Highway 22 truck route, and without keeping their vehicle under control, and failed and neglected to yield the right of way to the defendant's vehicle traveling upon Wheeler Avenue or Highway 22 truck route; plaintiffs failed to heed the traffic signs and signals on South Y Street and to stop before entering its intersection with Wheeler Avenue or Truck Route 22; that plaintiffs saw, or in the exercise of reasonable care should have seen, the defendant's truck approaching the intersection from their left and from the south, and knew, or by the exercise of ordinary care on their part should have known, that the defendant's truck had the right of way at said intersection and was traversing a through highway and was in a position of peril and danger if the plaintiff should fail to heed and obey the traffic laws of the State of Arkansas; that nevertheless the plaintiff, and each of them, continued to operate their automobile in a heedless disregard of the rules of the road and the obvious position of peril and danger which their actions created for the defendant's truck.

That the collision between said truck and automobile was solely and proximately caused by the negligence of the plaintiffs and each of them.

On October 12, 1957, the defendant filed its motion for severance of the causes of action of each of the plaintiffs pursuant to Rule 21, F.R.C.P., 28 U.S. C.A., and motions for leave as a third party plaintiff to serve a summons and third party complaint upon each of the plaintiffs.

On October 15, 1957, the motion for severance of the causes of action for each of the plaintiffs was granted.[1]

Also, on the same date the motions for leave to file third-party complaints were granted.

**1.** The order granting the motion reads as follows:

"On this 15th day of October, 1957, the motion of defendant, Colonial Baking Company of Fort Smith, for severance of the causes of action of each of the plaintiffs, pursuant to Rule 21 of the Federal Rules of Civil Procedure, having been considered, the Court is of the opinion that said motion should be granted upon the authority of 3 Moore's Federal Practice, 2nd Ed., Sec. 14.14, page 435; Sporia v. Pennsylvania Greyhound Lines, Inc., 3 Cir., 143 F.2d 105; Chevassus v. Harley, D.C.W.D.Pa., 8 F.R.D. 410; Smith v. Brown, D.C.Pa., 17 F.R.D. 39; Horton v. Continental Can Co., D.C.Neb., 19 F.R.D. 429. See also, Chicago, R. I. & P. R. R. v. Williams, 8 Cir., 245 F.2d 397–404.

"It is, therefore, ordered and adjudged that the causes of action of each of the plaintiffs herein against the defendant be, and the same is, severed.

"It is further ordered that the question of a separate trial of each of the plaintiffs against the defendant may be determined upon pretrial conference."

On October 21, 1957, the defendant filed its third-party complaint against the plaintiff, Robert P. Seyfer, Jr., in which it alleged that the plaintiff, Robert P. Seyfer, Jr., was guilty of certain acts of negligence specifically alleged, which proximately caused and contributed in whole or in part to any injuries suffered and sustained by the plaintiff, N. J. Lueken, to his person or property in the collision complained of in the complaint against the defendant and third-party plaintiff.

It was further alleged in the third-party complaint:

"Under the provisions of the Arkansas Contribution Among Joint Tort Feasors Act the defendant is entitled to contribution from N. J. Lueken to any judgment that may be rendered in favor of Robert P. Seyfer, Jr., against this defendant and in an amount proportionate to the degree of negligence of N. J. Lueken found to contribute to said accident and injury, if any."

Also, on the same date, October 21, 1957, the defendant filed its third-party complaint against the plaintiff, N. J. Lueken, containing allegations similar to the third-party complaint filed against the plaintiff, Robert P. Seyfer, Jr.

In due time the plaintiffs filed separate answers to the third-party complaints, and also filed a joint reply to the counterclaim of the defendant.

On January 2, 1958, the defendant filed its motion to make Universal Security Insurance Company an involuntary plaintiff or defendant under Rule 19, and alleged that the said insurance company had issued its policy of collision insurance to the plaintiff, N. J. Lueken, covering his automobile damages in the collision complained of in the complaint, with a $50 deductible provision, and that the said insurance company had paid the plaintiff, Lueken, the amount of the damages he suffered to said automobile, less said $50 deductible. That under its policy contract and the rules of common law, said insurance company is subrogated, to the extent of the payment made by it to plaintiff, N. J. Lueken, to the plaintiff's claim against this defendant for property damage, and that said insurance company and the plaintiff, Lueken, are therefore jointly the owners of said property damage claim asserted in the plaintiffs' complaint and have a joint interest in said claim.

On January 15, 1958, the motion of defendant to make Universal Security Insurance Company an involuntary plaintiff was granted, and on January 23, 1958, the Universal Security Insurance Company, pursuant to said order, filed its complaint as an involuntary plaintiff, in which it alleged that it had paid the plaintiff, N. J. Lueken, the sum of $897.-89 as damages to his automobile, and prayed that it recover from the defendant said sum, together with its costs.

Prior to the filing of the complaint of Universal Security Insurance Company and subsequent to the filing of the third-party complaints by defendant against plaintiffs, Seyfer and Lueken, the Court entered an order consolidating the claims of the plaintiffs against defendant for trial. A trial to the Court on the merits without a jury was held on February 6, 1958, upon the issues as made by plaintiffs' joint complaint and the answer of defendant thereto; the counterclaim of defendant against the plaintiffs and the answers of plaintiffs thereto; the third-party complaints of defendant against each of the plaintiffs and their separate answers thereto; and the complaint of the involuntary plaintiff, Universal Security Insurance Company. At the conclusion of the trial the parties were allowed time in which to file briefs in support of their respective contentions, and the briefs having been received and considered, along with all the testimony and exhibits thereto, the Court now makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact

#### 1.

The plaintiffs, Robert P. Seyfer, Jr., and N. J. Lueken, are citizens of Arkan-

sas and reside in the City of Little Rock, Arkansas.

The defendant, Colonial Baking Company, is a corporation organized and existing under the laws of the State of Delaware, and is authorized to do and is engaged in business in the Western District of Arkansas, Fort Smith Division.

The involuntary plaintiff, Universal Security Insurance Company, is a corporation organized under the laws of the State of Tennessee, and is duly authorized to do business in the State of Arkansas.

The amount involved herein exceeds the sum of $3,000, exclusive of interest and costs.

## 2.

Prior to June 12, 1957, the plaintiff, N. J. Lueken, had for several years been a traveling salesman for the Bopp Beauty and Supply Company of Little Rock, Arkansas, and worked as such salesman in the City of Fort Smith and surrounding territory during said time. In his work he furnished his own automobile, and often (when calling upon customers) carried with him certain supplies which he was offering for sale to barber shops and beauty parlors. The work had increased to such proportions that it became advisable to employ another salesman, and the plaintiff, Robert P. Seyfer, Jr., was employed by the Bopp Beauty and Supply Company about ten days prior to June 12, and was to take over the Fort Smith territory.

Seyfer had formerly lived in Fort Smith, but had not been a resident for several years, and was not familiar with the location of the customers in the City and surrounding territory. In order to permit Seyfer to become acquainted with the customers whom Lueken had been serving over a period of years, Lueken and Seyfer decided to make a trip to Fort Smith and to jointly call upon the customers. Accordingly, they left Little Rock in the automobile of Lueken, and upon their arrival in Fort Smith worked during the morning of June 12 in the City of Fort Smith. One of the customers advised them that there was a barber shop in Arkoma, Oklahoma, and that he thought the proprietor of that shop would purchase some of the products they were selling. The plaintiffs asked directions on how to reach Arkoma, which is a small village located in Oklahoma about one-half mile from the Arkansas boundary.

South Y Street in the City of Fort Smith leads from Towson Avenue in said City in a generally westerly direction to Arkoma. The street is locally known as the "Arkoma Road". The pavement of the street is concrete and is 18 feet wide. The plaintiffs, with Mr. Lueken driving, were proceeding on their way, following the directions that had theretofore been given them by their Fort Smith customer, and after traveling westerly on South Y Street, or the Arkoma Road, they approached the intersection of South Y, or Arkoma Road, with Wheeler Avenue, or Highway 22 truck route.

At the intersection Wheeler Avenue runs generally in a north and south direction, and was at the time and had been for some time designated as a through street. Following the designation of Wheeler Avenue as a through street, stop signs had been placed at the intersection on South Y Street, warning traffic moving either to the west or east on Y Street to stop before entering Wheeler Avenue. The stop sign that had been placed at the intersection of South Y Street and Wheeler Avenue, warning those traveling westerly to stop, had, been removed by unknown vandals only a short time prior to June 12. It is not known just when the stop sign had been removed, but after the collision between the plaintiff's automobile and the defendant's truck, the sign was found lying in a small creek, which is crossed by a bridge on South Y Street east of the intersection with Wheeler Avenue. The west end of the bridge over the creek and across South Y Street is approximately 30 feet east of the east line of the intersection of South Y Street and Wheeler

Avenue. The paved portion of the bridge is about 19 feet wide, north and south, while as above stated the paved portion of South Y Street is 18 feet. The bridge itself is about 35 feet long, east and west.

When the plaintiffs turned west off Towson Avenue and entered South Y Street going westerly, they traveled down grade for approximately 100 feet, when they crossed a grade crossing over a railroad track. From the railroad track westward to the intersection, the surface of South Y is level, and there was situated on the right-hand or north side of the pavement of the street and on the right-of-way a sign 357 feet east of the center of the intersection. The sign was in the usual form of Highway signs with the words "Stop Ahead". The plaintiff, Lueken, saw the sign, although the plaintiff, Seyfer, did not see it as he was busy making some notes in a notebook concerning the various customers that he and Lueken had previously called upon. Prior to seeing the said "Stop Ahead" sign, Lueken was driving approximately 25 to 30 miles per hour, and as he approached the bridge east of the intersection he was under the impression that the bridge was narrower than the pavement (although it was actually slightly wider than the pavement), and before entering upon the bridge he slowed his automobile to 5 to 7 miles per hour and looked to his left. He saw nothing to the left or south except two pieces of highway machinery which he thought were stationary and were located on the east side of Wheeler

Avenue about 60 to 70 feet south of the intersection.[2]

There was vegetation along the south side of South Y Street and the east side of Wheeler Avenue near the intersection. This vegetation tended to partially obstruct the view of the plaintiffs to the south, and by the same token tended to obstruct the eastward view of drivers traveling north on Wheeler Avenue.

After looking to the left Lueken looked to the right or north and saw no vehicles approaching. As he crossed the bridge he increased his speed to approximately 20 miles per hour. He had no knowledge that Wheeler Avenue had been designated as a through street, and, as heretofore noted, the stop sign that should have been at the intersection (directing westbound traffic on Y Street to stop) had been removed a short time before by vandals. Not seeing a stop sign at the intersection, Lueken assumed that the "Stop Ahead" sign he had seen east of the intersection referred to a possible stop sign at a viaduct crossing South Y at a point a short distance west of the intersection. (Shown in Defendant's Exhibit No. 4.) Continuing at the same speed of about 20 miles per hour, Lueken again looked to the left, seeing only the highway machinery, and to the right, seeing no approaching vehicles, and then drove into the intersection.[3] Lueken did not see defendant's truck until the vehicles were 4 or 5 feet apart, and it was too late for him to take any effective action to avoid a collision.

The automobile was 16 ft., 1.61 in. long, and weighed approximately 3,000

2. Actually Lueken was mistaken as to the location of the highway machinery. There was a highway roller on the east side of Wheeler Avenue about 500 to 600 feet south of the intersection; it was in operation and was headed south. There was also a motor patrol or grader located partially on the pavement and partially on the shoulder on the west side of Wheeler Avenue about 150 feet south of the intersection.

3. Seyfer's version of the accident was somewhat different from that of Lueken.

For example, Seyfer was of the opinion that Lueken almost completely stopped his automobile immediately before entering the intersection. However, Seyfer was merely riding as a passenger and could not be expected to remember the occurrence as well as the driver, Lueken, and the Court is of the opinion that Lueken's version of the accident is entitled to greater weight than that of Seyfer. Incidentally, Seyfer was looking to the right or north, and did not see defendant's truck prior to the collision.

lbs., exclusive of the weight of the two plaintiffs and merchandise weighing approximately 150 lbs. The automobile was struck on the left side. The front left door sustained the heaviest blow, although the photograph of the automobile, introduced in evidence as Exhibit No. 2 to the discovery deposition of Lueken, indicates that the car was first struck on the left front fender between the left front door and a point immediately over the left front wheel. The point of impact as designated by the debris in the highway was in the northeast quadrant of the intersection, 2 feet north of the center line of South Y Street and 3 feet east of the center line of Wheeler Avenue.

Following the impact, the automobile veered slightly to the northwest and went a distance of approximately 120 feet before going into a ditch and turning on its right side. A considerable portion of the distance of 120 feet was down grade. The defendant's truck was whirled counterclockwise, and came to rest facing southeast in the northwest quadrant of the intersection 16 feet northwest of the point of impact.

### 3.

The driver of defendant's truck was approaching the intersection from the south traveling north on Wheeler Avenue. When he was approximately 400 feet south of the intersection, he saw the automobile of the plaintiff, Lueken, on South Y traveling westward toward the intersection. At that time he had just passed the highway roller that was working in the east traffic lane. After passing the roller, he returned to the east traffic lane and proceeded north in his proper lane of travel into the intersection where the collision occurred. For some distance south of the intersection, the grade of Wheeler Avenue is slightly lower than that of South Y Street, and as he approached the intersection he was traveling up a slight incline. He was entirely familiar with the intersection as his home was approximately one-fourth of a mile south and west of the intersection, and he had passed over the

intersection daily for many years. He did not know that the stop sign on the east edge of the intersection, requiring traffic traveling in a westerly direction on South Y to stop, was not in place, and he assumed after he saw the car of plaintiff, Lueken, approaching from the east that it would stop before entering the intersection. Thus, neither the truck nor the automobile came to a full stop before entering the intersection.

The truck weighed approximately 6,200 lbs., exclusive of the weight of the driver and two or three pieces of lumber that were in the truck, and, as heretofore stated, collided with the left side of the automobile. The driver of the truck was not aware of the fact that plaintiff's automobile was not going to stop at the intersection until the two vehicles were both in the intersection and too near each other for the drivers to avoid a collision. Neither of the plaintiffs expressed any opinion as to the speed of the truck, but the other testimony discloses that it entered the intersection at a speed of about 20 miles per hour.

Neither the driver of the truck nor the plaintiffs were able to testify whether the automobile entered the intersection first or whether the truck entered first.

### 4.

John W. Michael had been operating the motor patrol or grader, but at the time of the collision was standing near the grader about 150 feet south of the intersection and on the west side of Wheeler Avenue. He immediately went to the scene of the collision, and testified as to the location of the truck and automobile after they had come to rest. Although within approximately 150 feet of the collision at the time it occurred, he was unable to say which vehicle first entered the intersection. He did testify that the front end of the truck which struck the left side of the automobile was bent from right to left, or to the west as shown by defendant's Exhibit No. 6. The defendant's Exhibit No. 2, attached to the discovery deposition of

the plaintiff, Lueken, showed an impact on the left side of the automobile almost immediately above the left wheel, but the main impact was two or three feet east and on the left door of the automobile.

The witness, E. E. Carden, who had been operating the highway roller to the south of the intersection, about 500 to 600 feet, upon hearing the collision, turned the roller and came north up to where the highway grader was sitting, and then went to the scene of the collision, but he did not see the collision and was unable to say which vehicle first entered the intersection.

### 5.

The testimony discloses that the plaintiffs received personal injuries; lost time from their employment; incurred medical and hospital expenses; suffered physical pain and mental anguish, and probably will continue to suffer some physical pain for an indefinite period of time; and will be unable to carry on their work with the same degree of efficiency as they did prior to the collision. In addition, the automobile of plaintiff, Lueken, was damaged.

The truck of the defendant was also damaged, and the driver of the truck received a blow on his head which necessitated some medical attention. However, the driver is not a party, and is not asserting any claim for damages.

In view of the conclusions of law reached by the Court, it is unnecessary to make any specific finding of the amount of damages sustained by any of the parties.

### Discussion

■ The accident occurred in Arkansas, and therefore the substantive law of Arkansas is the applicable law.

The claims of the plaintiffs on their complaint and the claim of the defendant on its counterclaim are governed by the provisions of Act 296 of the Regular Session, 61st General Assembly of Arkansas, which became effective March 27, 1957. Acts of Ark.1957, p. 874; Secs. 27–1730.1 and 27–1730.2, 1957 Cum.Pocket Supp., Ark.Stats., 1947, Anno. The act is as follows:

"Section 1. Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage.

"Section 2. In all actions hereafter accruing for negligence resulting in personal injuries or wrongful death or injury to property, the contributory negligence shall not prevent a recovery where any negligence of the person so injured, damaged, or killed is of less degree than any negligence of the person, firm or corporation causing such damage; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence."

■ In Kisor v. Tulsa Rendering Co., D.C.W.D.Ark., 113 F.Supp. 10, this Court reviewed at considerable length the decisions of the Supreme Court of Arkansas announcing the rules of law governing the substantive rights of parties involved in a collision of motor vehicles in Arkansas. It is unnecessary to again review the various decisions. A general résumé will suffice. Negligence under the Arkansas law is the failure to do that which a person of ordinary care and prudence would do under the same or similar circumstances, or the doing of something which a person of ordinary care and prudence would not do under the same or similar circumstances.

■■ The burden of proof is upon the plaintiffs to prove by a preponderance of the evidence that they received injuries which were proximately caused by the negligence of the defendant, or its servant while acting within the scope of his employment. Negligence is the proximate cause of an injury only if the

injury is the natural and probable consequence of the negligent act and ought to have been foreseen in the light of attending circumstances.

In Central Flying Service v. Crigger, 215 Ark. 400, at page 406, 221 S.W.2d 45, 48, the court quoting from Meeks v. Graysonia, Nashville & Ashdown R. Co., 168 Ark. 966, 272 S.W. 360, said:

" 'The rule is well established in this state that in an action for personal injuries, although the defendant may be shown to have been negligent in some manner, yet unless the negligence so shown is the proximate cause of the injury complained of, no recovery can be had on account of said injury. It has been uniformly held that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence, and that it ought to have been foreseen in the light of the attending circumstances. Pittsburg Reduction Co. v. Horton, 87 Ark. 576, 113 S.W. 647, 18 L.R.A., N.S.,905; St. Louis & S. F. R. Co. v. Whayne, 104 Ark. 506, 149 S.W. 333; St. L. Kennett & S. E. Rd. Co. v. Fultz, 91 Ark. 260, 120 S.W. 984; Hays v. Williams, 115 Ark. 406, 171 S.W. 882; and Bona v. S. R. Thomas Auto Co., 137 Ark. 217, 208 S.W. 306.' "

Again, in Capitol Transit Company v. Burris, 224 Ark. 755, at page 758, 276 S.W.2d 56, 58, the court said:

"Appellant cites Gage v. Harvey, 66 Ark. 68, 48 S.W. 898, 43 L.R.A. 143, 74 Am.St.Rep. 70. There the court said: 'In determining whether an act of a defendant is the proximate cause of an injury, the rule is that the injury must be the natural and probable consequence of the act; such a consequence, under the surrounding circumstances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act; the act must, in a natural and continuous sequence, unbroken by any new cause, operate as an efficient cause of the injury.' When the rule as announced in the Gage case is applied here, it becomes a question for the jury to determine under the surrounding circumstances whether the bus driver should have foreseen the very thing that did happen. Appellant further says: 'If the driver could have foreseen the effect of the intervening force and the ensuing injury, then his negligence would have been an official and legal cause of the injury.' Whether the bus driver could have foreseen the thing that did happen was a question for the jury."

The question is whether the evidence is sufficient to establish actionable negligence on the part of defendant's driver.

It must be borne in mind that the defendant's truck was proceeding in a northerly direction on Wheeler Avenue, a through street, and a street that had been designated as such by the City of Fort Smith and by the Arkansas Highway Commission. Stop signs had been erected requiring vehicles using South Y Street to stop before entering Wheeler Avenue, but unknown to the driver of defendant's truck the sign governing persons traveling on South Y Street in a westerly direction had been removed by vandals.

In Rexer v. Carter, 208 Ark. 342, at page 345, 186 S.W.2d 147, 148, the court said:

"The jury could have found from the testimony that appellee was not bound to anticipate the recklessness of appellant in driving at an excessive speed through a stop sign which protected the boulevard upon which appellee was traveling. See Berry, Automobiles, 7th Edition, Vol. 3, Sec. 3.29, and cases cited. The court in Kilroy v. Justrite Mfg. Co., 209 Ill.App. 499, said: 'The driver of an automobile has the right to assume that the driver of another automobile, with which it collides, will obey an ordinance prohibiting any ve-

hicle from being driven onto any boulevard without first bringing such vehicle to a full stop, and he is not guilty of contributory negligence in acting upon such assumption.' "

Again, in Kendrick v. Rankin, 219 Ark. 736, at page 739, 244 S.W.2d 495, 496, the court said:

"In Rexer v. Carter, 208 Ark. 342, 186 S.W.2d 147, we quoted from an Illinois case where it was held that the driver of an automobile has the right to assume that another driver (a collision being involved) will obey an ordinance prohibiting any vehicle from being driven onto any boulevard without first bringing such vehicle to a full stop, 'and he is not guilty of contributory negligence in acting upon such assumption'."

■ The testimony does not disclose that defendant's truck was being driven at an excessive rate of speed or that the driver was not maintaining a reasonable lookout for other vehicles entering Wheeler Avenue. The Court is of the opinion in view of the facts as found by it from the evidence that the driver of defendant's truck was not guilty of negligence which was a proximate cause of the injuries received and the damages sustained by plaintiffs, and the plaintiffs are not entitled to recover from defendant and their complaint should be dismissed.

As to the liability of plaintiffs to defendant on its counterclaim, the Court is likewise of the opinion that the facts do not warrant a conclusion of law that the plaintiffs were guilty of actionable negligence which proximately caused the damages sustained by the defendant.

The plaintiffs were not aware that Wheeler Avenue had been designated as a through street. The stop sign had been wrongfully removed by unknown vandals, and to plaintiffs it appeared that it was merely another intersection, the entrance to which was governed by the usual rules of the road and the exercise of that degree of care which an ordinary prudent person would exercise under the same circumstances. Evidently the plaintiffs were driving at a reasonable speed. They did not bring the automobile to a complete stop, but merely slowed the speed and entered the intersection at a speed which could not be held to be excessive.

Sec. 75–621, Ark.Stats.1947, Anno., is as follows:

"(a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.

"(b) When two [2] vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

"(c) * * *."

Lueken's automobile was to the right, and the testimony does not disclose which of the vehicles first entered the intersection. All that the proof does show is that the front end of defendant's truck came in contact with the left side of the plaintiff's, Lueken, automobile at a point in the northeast quadrant of the intersection. Under the facts as disclosed by the testimony the Court cannot hold that the plaintiff, Lueken, was guilty of actionable negligence in entering the intersection, absent proof on the part of the defendant as to the whereabouts of its truck in reference to the intersection at the time plaintiff, Lueken, drove into the intersection. See, Watkins v. Bright, 225 Ark. 879, 286 S.W. 2d 333.

In other words, the Court is of the opinion that Lueken and the defendant's driver were both exercising reasonable care under the circumstances. In this connection, in Elmore v. Dillard, Ark., 298 S.W.2d 338, 342, the court approved the following instructions:

"7. The burden rests upon the one who seeks to recover to establish by a preponderance of the evidence

that the accident complained of by him was not the result of an unavoidable accident.

"8. An unavoidable accident is one not avoidable by precaution which reasonable men would be expected to take. Such an accident furnishes no basis for recovery."

The appellant objected to the instruction on the ground that unavoidable accident had not been pleaded, but the court held:

"It is not necessary that unavoidable accident be specifically pleaded if the question is raised by the evidence. In 65 C.J.S. Negligence § 264 e, p. 1192, we find this: 'Ordinarily the issue of inevitable or unavoidable accident should be submitted to the jury where it is raised by the evidence; and such issue is raised when, and only when, there is evidence tending to prove that the injury resulted from some cause other than the negligence of the parties.' We think that is the situation here. That there was a collision and an injury is conceded, but the only parties accused of negligence have been exonerated. In the last paragraph of the above citation we find this language: ' * * * if the evidence is conflicting or different inferences can reasonably be drawn from the facts as to whether the injury was the result of negligence or inevitable accident, the question of defendant's liability is properly left to the jury.'"

In Newark Gravel Co. v. Barber, 179 Ark. 799, on page 802, 18 S.W.2d 331, 332, the court said:

"Appellant is correct in its contention that inevitable accident does not mean absolutely inevitable, but it means not avoidable by any such precaution as a reasonable man doing such an act then and there could be expected to take. In other words, if Austin was guilty of no negligence, and the thing happened, it would be an accident and be inevi-

table, although looking at it after it happened it might be easy to see how it could have been avoided. If Austin was guilty of negligence that caused the injury, it was not an accident, and appellant is liable. If Austin had been guilty of no negligence, then it would have been an inevitable accident, and there could have been no recovery."

In the case of Schmit v. Jansen, 247 Wis. 648, 20 N.W.2d 542, on page 543, 162 A.L.R. 925, on pages 926 and 927, the court said:

" 'An automobilist with knowledge of the location of a stop sign, has the right to rely when crossing the intersection on the assumption that anyone approaching it will observe it and similarly a traveler on a boulevard or arterial highway has a right to expect an operator of a motor vehicle on an intersecting street to stop before entering thereon * * *.' Blashfield, Cyclopedia of Automobile Law and Practice, § 1032, p. 216; Loizzo v. Conforti, 1932, 207 Wis. 129, 240 N.W. 790; Stabler v. Copeland, 1942, 304 Mich. 1, 7 N.W.2d 122. The right to make this assumption cannot be taken away because the stop sign, without the knowledge of the driver on the arterial highway, had been accidently turned so as to fail to conform with the requirements of law. It is likewise true that a person proceeding in the exercise of ordinary care cannot be held negligent in failing to stop at an intersection with an arterial highway with which he is not familiar and which is not properly marked with a lawful stop sign.

"The turning of the stop sign set the stage for the collision. Each party was relying on a rule of the road under circumstances which appeared to then and there exist. Defendant was on an arterial and reasonably assumed she had the advantage of proceeding over one approaching the highway. The deceased, because the stop sign had

been misplaced, reasonably assumed he had the advantage, because of being to the right of plaintiff and therefore having the right to proceed into the intersection. The reliance placed by each on the view as he saw it was not unreasonable. Deceased was a stranger in the town. He was not aware that Wisconsin avenue was an arterial highway. Defendant was a resident of Appleton and familiar with the highway and its intersecting streets. If neither was guilty of negligence, the turning of the stop sign would excuse each for proceeding until the approach of the other car called for some preventive act on the part of the driver. The evidence indicates that both defendant and deceased were using the same degree of caution and that the collision resulted because each, while exercising such care, relied on his right of way.

"Neither the action of defendant or plaintiff's deceased in entering the intersection can be held negligent. And under the evidence, the acts of defendant after both cars were in the intersection cannot be held to be negligent conduct."

And see generally, Annotation, 162 A.L.R. 927.

Therefore, in view of the facts as found by the Court neither the defendant nor either of the plaintiffs can be held guilty of actionable negligence. None of the parties did anything that a person in the exercise of ordinary care and prudence would not have done, or failed to do anything that a person in the exercise of ordinary care and prudence would have done under the same or similar conditions and circumstances.

Thus, the defendant has failed to establish actionable negligence on the part of the plaintiffs, or either of them, and is not entitled to recover on its counterclaim.

It is not necessary for the Court to determine the relationship that existed between the plaintiffs or whether they were engaged in a joint mission because, as heretofore stated, the Court has concluded that none of the parties was guilty of negligence.

Such rights as the involuntary plaintiff, Universal Security Insurance Company, may have in the case are dependent upon the right of its insured, Lueken, to recover, and since he is not entitled to recover from defendant, the involuntary plaintiff is not entitled to recover.

## Conclusions of Law

### 1.

The Court has jurisdiction of the parties and the subject matter of the cause of action.

### 2.

The plaintiffs are not entitled to recover from the defendant for the injuries received and damages sustained by them, and their complaint should be dismissed.

### 3.

The defendant is not entitled to recover from the plaintiffs or either of them on its counterclaim for damages to its truck, and its counterclaim should be dismissed.

### 4.

The involuntary plaintiff is not entitled to recover from the defendant on its complaint, and the same should be dismissed.

### 5.

None of the parties shall recover costs from any other party, and each party shall pay its own costs.

A judgment in accordance with the above is being entered today.